**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **GIANINA VIVONI-TRIGO,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 11-1756 (GAG)** |
| **MUN. OF CABO ROJO, et al.,** | |
| **Defendants.** | |

**OPINION AND ORDER**

     Gianina Vivoni-Trigo ("Plaintiff") brings suit against the Municipality of Cabo Rojo (the "Municipality"), Mayor Perza Rodríguez Quiñones ("Rodríguez"), Cynthia Millán Ferrer ("Millán"), Jorge Morales Wiscovitch ("Morales") and Benjamín Rivera Colón ("Rivera") for alleged violations of anti-discrimination and anti-retaliation statutes. (Docket No. 3.) Specifically, Plaintiff brings claims of gender discrimination, hostile work environment in the form of sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §§ 2000e *et seq.* and 42 U.S.C. § 1983 ("Section 1983") for violation of equal protection rights. Plaintiff also brings claims for supplemental state law violations of Puerto Rico Law 17 of April 22, 1988 ("Law 17"), P.R. LAWS ANN. tit. 29, §§ 155 *et seq.* and Article 1802 of the Civil Code of Puerto Rico ("Article 1802"), P.R. LAWS ANN. tit. 31, §§ 5141. Pending before the court are defendants' three summary judgment motions filed separately. Because the arguments raised by defendants are intertwined, the court addresses all motions jointly as follows.

     First, the Municipality filed a Motion for Summary Judgment seeking dismissal of Plaintiff's claims. (Docket No. 63.) Plaintiff opposed the motion (Docket No. 93) and submitted a statement of material facts (Docket No. 96). The Municipality replied (Docket No. 112), Plaintiff supplemented its opposition (Docket No. 121), and the Municipality filed a supplemental reply (Docket No. 131). After reviewing the parties submissions and pertinent law, the court **GRANTS in** part and **DENIES in part** the Municipality's Motion for Summary Judgment at Docket No. 63.

     Second, defendants Perza, Millán and Morales (collectively "Defendant Supervisors") filed

**Civil No. 11-1756 (GAG)**

a Motion for Summary Judgment seeking dismissal of Plaintiff's claims and the complaint in its entirety. (Docket No. 81). On that same date, Defendant Supervisors filed a memorandum in support of their motion and a statement of uncontested material facts. (Docket Nos. 83 & 84). Plaintiff opposed the motion (Docket No. 113), responded to the statement of material facts (Docket No. 114), filed a supplemental statement of material facts (Docket No. 115), and supplemented their opposition (Docket No. 119). Defendant Supervisors replied (Docket Nos. 140 & 142). Plaintiff presented a sur-reply (Docket No. 147) and Defendant Supervisors sought to strike it (Docket No. 148). After reviewing the parties' submissions and pertinent law, the court **GRANTS** Defendant Supervisors' Motion for Summary Judgment at Docket No. 81.

Finally, Rivera filed a Motion for Summary Judgment (Docket No. 85). Plaintiff opposed the motion and incorporated all the arguments raised against other defendants (Docket No. 118).[1] After reviewing the parties' submissions and pertinent law, the court **GRANTS** Rivera's Motion for Summary Judgment at Docket No. 85.

## I.      Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to

---

[1] Plaintiff's "Statements of Material Facts", supporting Exhibits at Docket Nos. 96, 98, 99 and 100, factual and legal arguments contained therein were incorporated by Plaintiff in support of her opposition to all three motions for summary judgment. (See Docket No. 118 at 1.)

Civil No. 11-1756 (GAG)

1   support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the

2   existence of at least one fact issue which is both genuine and material."  Maldonado-Denis v.

3   Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmovant may establish a fact is

4   genuinely in dispute by citing particular evidence in the record or showing that either the materials

5   cited by the movant "do not establish the absence or presence of a genuine dispute, or that an

6   adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).

7   If the court finds that some genuine factual issue remains, the resolution of which could affect the

8   outcome of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby,

9   Inc., 477 U.S. 242, 248 (1986).

10          When considering a motion for summary judgment, the court must view the evidence in the

11  light most favorable to the non-moving party and give that party the benefit of any and all

12  reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not

13  make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate,

14  however, if the non-moving party's case rests merely upon "conclusory allegations, improbable

15  inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21

16  (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

17  **III.     Relevant Factual Background[2]**

18          A.     Plaintiff's Sexual Harassment Claim

19          On February 15, 2001, the Municipality enacted and approved official regulations

20  proscribing sexual harassment in the workplace and establishing its policies, rules, and procedures

21  related therewith. (See Docket No. 63-4.)  At all times relevant to this case, Rodríguez was the

22  Mayor of the Municipality; Morales was the Deputy-Mayor of the Municipality and Millán was the

23

24          [2] Plaintiff relies on various facts related to other alleged victims of harassment, e.g., that Rivera displayed the same
    inappropriate behavior he showed towards Plaintiff towards female tourists that visited the Cabo Rojo Lighthouse and that,
25  allegedly, female visitors who were offended by Rivera's conduct complained to the Municipality's employees and
    administrators. (Docket No. 96)  Plaintiff brings this argument (while not providing any substantiating evidence) to
26  demonstrate the legitimacy of Plaintiff's claims in this case.  While the court finds these facts relevant to demonstrating
    Rivera's harassment and are relevant when arguing there was a hostile work environment, the details of those allegations do
27  not relate to Plaintiff's claims. Therefore, the court only includes those facts that are both relevant and supported by the record.

28                                              3

Civil No. 11-1756 (GAG)

1    Director of Development and Tourism of the Municipality. (Docket No. 3.)  Also, at all times

2    relevant to the case at bar, Plaintiff was employed with the Municipality and worked as a tourist

3    guide at the Cabo Rojo Lighthouse. (Docket Nos. 3; 63-2 at 9.)  Pursuant to Plaintiff's testimony,

4    she was not provided with a copy of the Municipality's sexual harassment policy nor did she receive

5    any training on the topic. (Docket No. 98-1 at 75.)  Pedro Guadalupe ("Guadalupe") also worked

6    at the Lighthouse as an administrative assistant at all relevant times to this case. (Docket Nos. 3; 98-

7    1 at 14.)  On January 2009, Millán became Plaintiff's and Guadalupe's immediate supervisor.

8    (Docket No. 137-1 at 5.) Millán was, at all times relevant, Plaintiff's immediate supervisor. (Docket

9    No. 84-1 at 72.)  Millán did not work at the Lighthouse; rather, her office was located elsewhere in

10   the town of Cabo Rojo. (Docket No. 63-2 at 37 and 38.)  Plaintiff testified that between November

11   2009 and the summer of 2010 (the relevant timeframe for this case) Millán visited the Lighthouse

12   on no more than three occasions. (Docket No. 63-2 at 40.)

13        In early December 2009, Rivera was assigned to work at the Lighthouse as Worker 1[3].

14   (Docket No. 96, ¶ 21; 98-1 at 16, 17.)  The only individuals stationed at the Lighthouse at all times

15   relevant to this case were Plaintiff, Guadalupe, and Rivera. (Docket No. 98-1 at 14.)  To access the

16   Lighthouse, the aforementioned employees had to use an all-terrain official vehicle. (Docket No.

17   63-2 at 27 and 28.)  On or about late December 2009, Rivera allegedly began to sexually harass

18   Plaintiff. (Docket No. 98-1; 18.)  Plaintiff never complained to Millán regarding Rivera's conduct

19   or innuendos. (Docket No. 84-1 at 39-40.)  Plaintiff does not know if Millán nor Rodríguez

20   witnessed Rivera's inappropriate behavior towards Plaintiff. (Docket No. 63-2 at 40; 84-1 at 69.)

21

22   _____

23        [3] Plaintiff submitted with her Statement of Material Facts a written declaration by Wilhem Montalvo executed on
     February 12, 2013.  (Docket No. 96-1.)  Montalvo declared that he had worked alongside Rivera as a security guard and
24   described Rivera's behavior towards women as offensive, sexually charged and vulgar.  In his declaration, Montalvo said he
     denounced Rivera's behavior and made a written report.  However, Montalvo failed to provide information regarding when
25   and to whom he allegedly denounced Rivera's conduct to.  The court notes that this written report was not made part of the
     record and without such report, the court cannot rule on its content.  Thus, the court refrains from relying on Montalvo's
     declaration as it pertains to denouncing Rivera's behavior for it is unsupported by the record.  Further, Plaintiff alleges that
26   Rivera displayed inappropriate behavior towards female guests at the Lighthouse. (Docket No. 3) However, Plaintiff testified
     the only Municipality personnel she informed this to was Guadalupe and Plaintiff does not know what Guadalupe did with
27   this information. (Docket No. 84-1 at 34.)

28                                        4

Civil No. 11-1756 (GAG)

1    Plaintiff testified she decided not to approach Millán because she had a "feeling that she

2    would never do something about it." (Docket No. 63-2 at 40-41.)  Plaintiff alleges that Rivera

3    boasted he was "untouchable" or he received protection from Millán, nevertheless Plaintiff has no

4    knowledge or evidence that Rivera had any sort of relationship with Millán outside of the workplace

5    nor does Plaintiff provide evidence that Rivera had any sort of relationship with any managerial

6    personnel of the Municipality or Mayor Rodríguez herself. (Docket No. 84-1 at 37.)  Plantiff alleged

7    Rivera was assigned duties akin to a tour guide, however, she recalled one occasion between

8    December 2009 and June 2010 when Rivera served as a tour guide during the Mexican Consul's

9    visit to the Lighthouse. (Docket No. 84-1 at 67-68.)  This bothered Plaintiff because it made her feel

10   her work as a tour guide was not good. Id.

11   Guadalupe testified of having complained to Millán regarding Rivera's conduct towards

12   females. ( Docket No. 99-1 at 31.) Guadalupe said he told Millán that he saw Rivera taking pictures

13   of mostly females in bikinis and asking for their e-mails to send them the pictures. (Docket No. 99-1

14   at 71-72.)[4] According to Guadalupe, on or about March or April 2010, he called then Deputy Mayor

15   Morales to inform him of the issues that were taking place at the Lighthouse. (Docket No. 98-1 at

16   34, 36, 78, 79.)  Guadalupe testified that he told Morales that there were "situations occurring with

17   Plaintiff" and what he perceived was Rivera's conduct towards Plaintiff, i.e., Rivera would make

18   personal complaints against Plaintiff during the commute to the Lighthouse, Rivera made comments

19   regarding the way Plaintiff dressed or her body parts, Rivera would sometimes follow Plaintiff

20   around the Lighthouse and that Plaintiff would often times cry.  (Docket No. 98-1 at 36, 37, 79.)

21   Morales responded advising Guadalupe to tell Plaintiff to give him a call. ( Docket No. 98-1 at 37.)

22   Guadalupe gave Plaintiff Morales' message "to call him". (Docket Nos. 96 at 10; 114 at 2.)

23   Guadalupe never informed his direct supervisor, Millán, about the sexual harassment he

24   observed from Rivera towards Plaintiff. (See Docket No. 98-1 at 74.) Neither did Guadalupe inform

---

[4] The court notes that based on the record, the timing of such conversation is unclear, however, Plaintiff alleges it was on or around the end of January to March 2010, presumably while Plaintiff was on vacation.

**Civil No. 11-1756 (GAG)**

then Municipal Administrator, Juan Carlos Padilla ("Padilla") (or any other Municipality official), of Rivera's behavior. (See Docket No. 98-1 at 31.)  Guadalupe decided to notify Plaintiff's live-in partner, Kenneth Thompson ("Thompson"), concerning Plaintiff's situation with Rivera and how he acted towards her. (See Docket Nos. 63-2 at 44; 98-1 at 40-42.)  The record shows that Guadalupe does not recall the exact time of this conversation, however, he testified it was towards the summer of 2010. (See Docket No. 98-1 at 41.)  Sometime afterwards, in June 2010, Thompson (not Plaintiff) called Padilla regarding Rivera's behavior towards Plaintiff. (Docket No. 98-1 at 42-44.)  Pursuant to Plaintiff's statement "[H]e was told more or less what was happening." Id.  Padilla advised Thompson[5] on the proper course of action, filing a complaint with the Human Resources Department. (Docket No. 63-2 at 44.)  By Plaintiff's own admission, Padilla was the first municipal official who learned about Rivera's conduct. (Docket No. 63-2 at 42.)  Plaintiff first verbally complained (via Thompson) to Padilla and immediately put her complaint in writing. (Docket No. 98-1 at 45-46.)

The day after Thompson's telephone conversation with Padilla, she filed a formal sexual harassment complaint with the Municipality's Human Resources Department. (Docket No. 98-1 at 45-46.)  In response to Plaintiff's complaint, the Municipality immediately removed Rivera from the Lighthouse. (Docket No. 98-1 at 46.)  Plaintiff testified that "[t]he next day [after she filed the complaint] he was no longer at the Lighthouse." Id.  From then on, Plaintiff neither had any further contact with Rivera, nor did she suffer or endure any further harassment or was victimized by

---

[5] According to Rivera, on June 26, 2010, Thompson confronted him at the Lighthouse and allegedly insulted him. (Docket Nos. 99-2; 100-2.)  Rivera called Millán to inform her that he was confronted and insulted by Thompson at the Lighthouse. (Docket No. 137-1 at 7.)  Millán testified she advised Rivera to go to the police and file a complaint because Thompson was not an employee of the Municipality and advised him to make a note of everything that happened. (Docket No. 137-1 at 7.)  Based on Millán's testimony, when Rivera told her of Thompson's allegations that he was disrespecting Plaintiff, she called the Municipality's Human Resources Department that same day. (Docket No. 137-1 at 8.)  On June 28, 2010, Rivera addressed a letter to Millán informing her of his run-in with Thompson. (Docket No. 100-2).  Plaintiff testified the only persons who know what was said among the men during the confrontation are Thompson and Rivera, the two men involved. (Docket No. 84-1 at 47-49.)

**Civil No. 11-1756 (GAG)**

1   Rivera. (Docket No. 63-2 at 53-54.)

2       Plaintiff's sexual harassment complaint against Rivera led to an investigation conducted

3   by the Municipality that included interviews with various employees, including Plaintiff. (Docket

4   No. 63-2.)  The Municipality was able to substantiate Plaintiff's claims and on December 9, 2010,

5   it issued an Official Examiner's Report concluding that Rivera engaged in inappropriate and

6   obscene conduct constitutive of sexual harassment in violation of the Municipality's policies and

7   procedures. Id.  On December 13, 2010, the Municipality sanctioned Rivera with a disciplinary

8   action in the form of a written reprimand. (Docket No. 63-2.)

9       In March 2011, Plaintiff filed a sex discrimination and sexual harassment charge with the

10  Equal Employment Opportunity Commission ("EEOC"). (Docket Nos. 63-2 at 49-52.)  The parties

11  failed to submit such complaint for the record.  Plaintiff testified that the charge only included facts

12  pertaining to sexual harassment and not retaliation. Id.  On March 15, 2011, Plaintiff submitted two

13  documents by facsimile for the EEOC's consideration: (1) a  statement claiming she was object of

14  employment discrimination based on gender, sexual harassment, hostile work environment and

15  retaliation; and (2) a Right to Sue letter by Plaintiff's attorney requesting to pursue the initial

16  employment discrimination claim. (Docket Nos. 115-3; 115-4; 119-1)  Plaintiff asserts that on April

17  5, 2011 she subsequently amended the charge to include a retaliation claim.  (See Docket No. 121)

18  On April 5, 2011, Plaintiff's attorney requested a Right to Sue letter to further pursue her client's

19  claims in federal court. (See Docket Nos. 115-5; 11–2.)  The letter included as the subject line

20  Plaintiff's full name and the following references: U.A.D. 16H2011 00354 (Sexual Harassment) and

21  EEOC 515-2011-00240 (Retaliation).  See Id.  In a document dated April 11, 2011, the EEOC

22  notified Plaintiff that her request had been forwarded to the U.S. Department of Justice ("DOJ").

23  (See Docket No. 115-7; 119-3.)   On April 26, 2011 Plaintiff presented an extrajudicial claim

24  addressed to Perza, Millán and Rivera.  (See Docket Nos. 115-6; 119-4.)  On May 2, 2011, the DOJ

25  notified Plaintiff a Right to Sue letter pertaining to charge  No. 16H2011-00354. (Docket Nos. 115-

26  8 at 1; 119-5 at 1.)  On May 5, 2011, the DOJ notified Plaintiff a Right to Sue letter pertaining to

27

28

**Civil No. 11-1756 (GAG)**

1  charge  No. 515-2011-00240. (Docket Nos. 115-8 at 2; 119-5 at 2.)

2        B.      Plaintiff's Retaliation Claim

3        Plaintiff alleges after she filed her sexual harassment complaint with the Municipality,

4  Millán retaliated against her.  The court thus includes the relevant facts that may relate to a

5  retaliation claim in turn.  After Rivera was removed from the Lighthouse, Plaintiff testified she

6  worked alone there a "couple of times" (per Millán's request). (Docket No. 98-1 at 97-98.) Plaintiff

7  also said Millán required her to work alone at the Lighthouse only one time around the summer of

8  2010 at a radio amateur's activity. (Docket No. 63-2 at 95.) Plaintiff further testified that Guadalupe

9  also remained working at the Lighthouse and the times she worked alone were when Guadalupe was

10  either sick or absent, which was not the norm. (Docket No. 63-2 at 96.) Plaintiff testified that when

11  she did not go to work because there was no one to be with her in the Lighthouse, those absences

12  were counted as vacation time. (Docket No. 98-1 at 100.) Plaintiff also testified that Millán would

13  allegedly count her vacation time as absences, consequently she received a seventy six percent on

14  her evaluation. (See Docket No. 98-1 at 79-80.)

15        Plaintiff also testified that her use of leaves became an issue with Millán. (Docket No. 98-1

16  at 79-81.) Plaintiff only refers to and the record shows only one concrete incident regarding her

17  medical certificates (and Millán allegedly not accepting those certificates) that dates back to summer

18  2009. (Docket No. 63-2 at 82-83.)   Plaintiff asserted in her deposition that she was never

19  admonished for absenteeism or tardiness. (Docket No. 63-2 at 95.) Plaintiff also testified that she

20  received two evaluations per year and that she received two evaluations exceeding seventy percent

21  both in 2009 and 2010. (Docket No. 63-2 at 41-42.)[6] Plaintiff did not experience any reduction or

22  withholding in salary due to her performance evaluations. (Docket No. 63-2 at 42.)

23

24

25  _____

26        [6] The exact dates and content of those evaluations are unknown to the extent Plaintiff did not provide such dates,
27  and the parties failed provide the court with copies of such evaluations.

28                                        8

Civil No. 11-1756 (GAG)

**IV.    Discussion**

Plaintiff presses claims of discrimination under Title VII invoking the hostile work environment in the form of sexual harassment and retaliation.  Plaintiff also asserts a Section 1983 claim for violation of her equal protection rights. Plaintiff's sexual harassment claim also invokes various supplemental claim under local laws.   The court addresses each in turn as follows.

A.    Sexual Harassment Claims

**1.    Title VII**

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.'" Vance v. Ball State Univ., 133 S. Ct. 2434, 2440 (2013) (quoting 42 U.S.C. § 2000e-2(a)(1)).  "Harassment on the basis of sex is a violation of . . . [T]itle VII.  Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment . . . ." 29 C.F.R. § 1604.11 (2010).  A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986) ("Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.").  In addition to gender discrimination, "sexual harassment is a form of sex discrimination" and hostile work environment is a form of sexual harassment. Medina Rivera v. MVM, Inc., 713 F.3d 132, 136 (1st Cir. 2013); Valentin-Almeyda v. Mun. de Aguadilla, 447 F. 3d 85, 94 (1st Cir. 2006.)

Hostile work environment claims based on the various protected classes are evaluated under similar standards. Faragher v. Boca Raton, 524 U.S. 775, 787 (1998) (harmonizing framework between racial and sexual discrimination); see also Vance, 133 S. Ct. at 244. To succeed in a sexual harassment claim manifested as a hostile work environment claim under Title VII, a Plaintiff must demonstrate:

(1) that he (she) is a member of a protected class; (2) that he (she) was subjected to unwelcome [protected class] harassment; (3) that the harassment

**Civil No. 11-1756 (GAG)**

> was based upon [Plaintiff's sex]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; (5) that [the] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and that he in fact did perceive it to be so; and (6) that some basis for employer liability has been demonstrated.

Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002); Perez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 27 (1st Cir. 2011) (citing Agusty-Reyes v. Dep't. of Educ. of P.R., 601 F.3d 45, 52 (1st Cir. 2010) (discussing hostile work environment in sexual harassment case)). In applying this test, the court evaluates the claim "in light of the 'record as a whole' and mindful of 'the totality of the circumstances.'" Id. at 29 (quoting Meritor Savings Bank, 477 U.S. at 69).

Plaintiff's case for workplace discrimination cements on her contention that experienced sexual harassment in the form of a hostile work environment. When considering all of Plaintiff's allegations as true, a reasonable jury could find that the totality of Rivera's alleged actions, which took place over a period of six months, could have created an abusive working environment when viewed either objectively or subjectively. See O'Rourke, 235 F.3d at 729 ("Evidence of sexual remarks, innuendoes, ridicule, and intimidation may be sufficient to support a jury verdict for a hostile work environment."); see also Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 19-20 (1st Cir. 2002). Notwithstanding, "[T]he existence of a hostile environment is determined by the finder of fact, though . . . that does not prevent a court from ruling that a particular set of facts cannot establish a hostile environment as a matter of law in an appropriate case." Billings v. Town of Grafton, 515 F.3d 39, 47 (1st Cir. 2008) (internal citations omitted); see also Gorski v. N.H. Dep' t of Corrections, 290 F.3d 466, 474 (1st Cir. 2002).

That said, not one defendant contests that Plaintiff was, in fact, subjected to sexual harassment. Regarding Plaintiff's allegations of Rivera's harassment, neither defendant contends otherwise. Consonant with the above, the Municipality admits Plaintiff satisfies prongs (1)-(5) of the hostile work environment framework. Therefore, the court need not assess the aforementioned factors. The Municipality only attacks Plaintiff's failure to meet the sixth prong, arguing that it may not be held liable under Title VII because it is impossible to conclude that the Municipality knew

10

**Civil No. 11-1756 (GAG)**

1  or should have known that Rivera subjected Plaintiff to a hostile work environment.  (Docket No.
2  63.)  As such, the court focuses on the sixth factor, employer liability.

3                              a.      Employer Liability

4       The final prong of a hostile work environment test requires plaintiff to demonstrate some
5  basis for employer liability.  See Crowley, 303 F.3d at 395 (2002).  Different rules apply depending
6  on whether the harassing employee is a supervisor or a coworker.  Crowley, 303 F.3d at 401; Vance,
7  133 S. Ct. at 2441.  "When it is a supervisor that creates an actionable hostile work environment,
8  the employer is vicariously liable."  See id.; Faragher, 524 U.S. at 807 ("An employer is subject to
9  vicarious liability to a victimized employee for an actionable hostile work environment created by
10  a supervisor with immediate [. . .] authority over the employee."). The court need not detail further
11  case law with respect to supervisory liability because in this case the harasser was not a supervisor.

12       In pertinent part, when the alleged harasser is a non-supervisor or coworker, the employer
13  is not vicariously liable.  Crowley, 303 F.3d at 401. Under this scenario, the employer will be held
14  liable only "if he knew or should have known of the charged sexual harassment and failed to
15  implement prompt and appropriate corrective action." Id.  (internal quotations omitted); Noviello
16  v. City of Boston, 398 F.3d 76, 95 (1st Cir.2005) (stating that an employer can only be held liable
17  for harassment perpetrated by a coworker when the harassment is causally connected to some
18  negligence on the part of the employer). Therefore, an employer may be held liable if information
19  of the harassment comes "to the attention of someone who is reasonably believed to have a duty to
20  pass on the information." Crowley, 303 F.3d at 403 (citing Sims v. Health Midwest Physician Servs.
21  Corp., 196 F.3d 915, 920 (8th Cir.1999)).  Although the standard for the imposition of liability when
22  the harasser is a coworker is more favorable to the employer than the vicarious liability standard,
23  if the alleged harasser and victim are coworkers, the employer must prevail on the traditional
24  negligence standard to avoid liability. Id. Naturally, however, the latter not being an affirmative
25  defense for defendants, the plaintiff retains the burden of proof. Ortiz v. Hyatt Regency Cerromar
26  Beach Hotel, Inc., 422 F. Supp. 2d 336, 342 (D.P.R. 2006).

27

28                                         11

Civil No. 11-1756 (GAG)

1    In this case, it is uncontested that Plaintiff's harasser was Rivera, her co-worker who was

2    employed as a janitor.  Plaintiff must therefore prove that the Municipality "knew or reasonably

3    should have known" of the alleged sexual harassment she suffered and failed to take prompt action.

4    Crowley, 303 F.3d at 401.  It is also uncontested that once Plaintiff filed a formal complaint with

5    the Human Resources Department, the Municipality removed Rivera from Plaintiff's place of

6    employment and a thorough investigation ensued as to her sexual harassment allegations against

7    Rivera, resulting in corrective action, to wit, a written reprimand.  Plaintiff alleges that such

8    corrective measures were insufficient.  However, the record is devoid of any evidence to substantiate

9    such allegation or to suggest that this investigation was flawed, biased, or ineffective.

10    There are genuine issues of fact as to whether the Municipality "knew or should have

11    known" of the harassment before Plaintiff filed her formal complaint with Human Resources and

12    yet failed to promptly correct it.  Material issues of fact exist as to whether Gudalupe's alleged

13    "complaints" about Rivera's behavior to Millán and Morales, prior to Plaintiff filing her formal

14    sexual harassment complaint with Human Resources, prove that the Municipality had constructive

15    knowledge of the harassment and failed to take corrective action.  This is medular to the controversy

16    at hand, whether the Municipality is liable under Title VII.

17    The court begins by noting that Plaintiff's allegations in her Complaint and her Statement

18    of Material Facts run, at times, contrary to her deposition testimony under oath.  For example, while

19    she claims that Millán " knew or reasonably should have known" about Rivera's illegal conduct at

20    the workplace and failed to investigate and/or correct the situation, Plaintiff testified she *never*

21    complained to Millán. (See Docket No. 84-1 at 39-40.)  Moreover, Plaintiff testified she was not

22    aware that Millán witnessed any harassing behavior from Rivera. (See Docket No. 84-1 at 69.)

23    Furthermore, the record shows that until Plaintiff filed her formal complaint with the Human

24    Resources Department, she had not informed *anyone* of the alleged sexual harassment. (See Docket

25    No. 63-2 at 42.)  Another example of contradiction is that in her complaint  Plaintiff alleges she

26    called Padilla to *further* denounce the illegal working conditions she was suffering. This, however

27

28                                          12

**Civil No. 11-1756 (GAG)**

1  contradicts her testimony where Plaintiff asserted it was actually Thompson, her live-in partner who

2  called Padilla and informed him for the *first time* of Plaintiff's situation with Rivera.  (See Docket

3  No. 84-1 at 39-40.)

4  Drawing all inferences in favor of Plaintiff, the court now discusses the relevant issues of

5  material fact in connection with the putative "notice" to the Municipality and the timing of such

6  "notices" to ascertain if the Municipality in fact had knowledge of the sexual harassment and yet

7  failed to take action. Plaintiff alleges that her supervisor Millán and Morales were aware of the

8  sexual harassment, however, she failed to provide a coherent and uncontested time line as to these

9  "complaints." The time frame being of the essence, Plaintiff had to anchor her facts to specific dates

10  so as to allow the Court to draw reasonable inferences on her behalf. See Ortiz, 422 F. Supp. at 345.

11  Since Plaintiff admitted she *never* complained about the sexual harassment, the court will address

12  any instance supported by the record whereby constructive knowledge or "notice" may be imputed

13  to the Municipality.  In conducting such analysis, the court found material issues of fact.

14  The first instance the court found that *may* constitute "notice" to the Municipality is when

15  Guadalupe allegedly complained to Millán about Rivera's behavior towards females (nothing

16  regarding Plaintiff specifically).  And again, Guadalupe testified he *never* told Millán about

17  Plaintiff's situation with Rivera.  The timing of this alleged event is unclear.  Pursuant to

18  Guadalupe's testimony, this happened sometime between January and March 2010.  To reiterate,

19  the timing issue is critical to ascertain if the Municipality, after having knowledge of the harassment,

20  took prompt and appropriate action to avoid harm to Plaintiff.  So, a clear issue of timing exists,

21  nevertheless, it is clear this event occurred prior to Plaintiff filing her formal complaint.  Other than

22  the timing issue, more importantly, there is a triable issue of fact; a classic he said/ she said dispute.

23  What may be the Municipality's first imputed "notice" of Rivera's behavior rests solely on

24  Guadalupe's testimony.  What is more, Plaintiff included as an undisputed fact that Millán testified

25  "she did not know about the matter" until after Plaintiff talked to Human Resources to file her

26  complaint in June 2010. (Docket No. 96 at 16.) Drawing reasonable inferences in favor of Plaintiff,

27

28                                          13

Civil No. 11-1756 (GAG)

1    there is genuine issue of fact as to whether this alleged first "notice" can be interpreted as such and,

2    in turn, prove the Municipality "knew or should have known" of Rivera's conduct before Plaintiff

3    filed her formal complaint.

4         Second, what *may* constitute another "notice" of Rivera's harassment to the Municipality

5    before Plaintiff's complaint again came from Guadalupe at an unknown date.  Guadalupe testified

6    that, sometime around March or April 2010, he called Morales to inform him of the issues that were

7    taking place at the Lighthouse and what he perceived was Rivera's conduct towards Plaintiff.

8    Morales allegedly responded by advising Guadalupe to tell Plaintiff to give him a call.  The record

9    is clear that Plaintiff never called Morales.  Plaintiff, nevertheless, alleges that Morales responded

10   to the information provided by Guadalupe by doing absolutely nothing. (See Docket No. 3 at 7.)

11        Once more, the specific date is unknown; it could be two months after, a month after or in

12   the same month of the first "notice."  Thus, the court cannot determine whether the Municipality

13   failed to act promptly.  So, not only is there issue as to the date of this purported "notice" to the

14   Municipality *vis-a-vis* Morales, a genuine issue of material fact exists as to whether the Municipality

15   acted negligently by failing to follow-up upon being appraised by a co-worker of alleged

16   harassment, if the Municipality exercised reasonable care to prevent and correct any harassing

17   behavior, and if Plaintiff unreasonably failed to take advantage of any preventive or corrective

18   measure provided by the Municipality to avoid harm otherwise.  See Bombaci v. Journal

19   Community Pub. Group, Inc., 482 F.3d 979 (7th Cir. 2007); Abdul-Hakim v. Goodyear Tire &

20   Rubber Co., 455 F.Supp.2d 1267 (10th Cir. 2006).  These issues alone preclude summary judgment

21   as to whether the Municipality is liable under Title VII.

22        Another issue of material fact relates to the only remaining " notice" to the Municipality

23   before Plaintiff filed her complaint.  The timing,  once again, is not specific.  Sometime in June

24   2010, Thompson called then Municipal Administrator, Padilla, concerning Rivera's behavior

25   towards Plaintiff.  Pursuant to Plaintiff's own testimony, Padilla was told "more or less what was

26   happening."  Padilla advised Thompson on the proper course of action, e.g., filing a complaint with

27

**Civil No. 11-1756 (GAG)**

1  the Human Resources Department.  Now, by Plaintiff's own testimony, she acknowledges that

2  Padilla was the *first* municipal official to learn about Rivera's conduct. (See Docket No. 63-2 at 42.)

3  Moreover, Plaintiff asserted as an uncontested fact that Padilla informed then Human Resources

4  Director, Dalila Vélez, that Plaintiff was interested in filing a sexual harassment complaint. (See

5  Docket No. 96 ¶ 99.)   Plaintiff also revealed that Vélez met with her and then called Millán to

6  inform her of the situation. See id.  Plaintiff added that Millán told Vélez she knew nothing about

7  the matter. See id.  Finally, it is undisputed and Plaintiff's testimony reveals that the day after

8  Thompson called Padilla, she filed a formal sexual harassment complaint with Human Resources.

9  (See Docket No. 98-1 at 45, 46.)   Also, both parties agree that the day after Plaintiff filed her

10  complaint, the Municipality removed Rivera from Plaintiff's workplace at the Lighthouse and began

11  an investigation.

12      The Municipality argues that based on the facts, it is impossible to conclude that the

13  Municipality "knew or should have known" that Rivera was subjecting Plaintiff to sexual

14  harassment (prior to the filing of Plaintiff's complaint). (See Docket No. 63 at 4.)  If the trier of facts

15  finds that Plaintiff's formal complaint to Human Resources constituted its first (and only) "notice"

16  of any harassment by Rivera, the Municipality's immediate reaction and the fact that they removed

17  Rivera from the Lighthouse the day after Plaintiff filed her complaint clearly demonstrate that the

18  Municipality indeed took immediate and prompt action to correct any harassing behavior towards

19  Plaintiff.  In any case, even drawing reasonable inferences in Plaintiff's favor, issues of fact still

20  exist as to whether the Municipality "knew or reasonably should have known" of any harassing

21  behavior against Plaintiff *before* she filed her formal complaint with Human Resources.

22      Accordingly, genuine issues of material fact exist sufficient to deny summary disposition.

23  Genuine issues of material facts as to whether the Municipality "knew or should have known" of

24  Plaintiff's sexual harassment before she filed her formal sexual harassment complaint with Human

25  Resources and failed to take prompt remedial action precludes summary judgment in favor of the

26  Municipality. See Grazioli v. Genuine Parts Co., 409 F.Supp.2d 569 (3rd Cir. 2005).  Moreover,

27

28                                    15

Civil No. 11-1756 (GAG)

genuine issue of facts exists as to whether the Municipality acted negligently and if its negligence

is causally connected to the harassment.  Consequently, the Municipality's Motion for Summary

Judgment at Docket No. 63 on the basis employer liability under Title VII is **DENIED.**

b.    Individual Liability

The First Circuit "definitively held that there is no individual liability under Title VII."

Fantini v. Salem State Coll, 557 F.3d 22, 31 (1st Cir.2009). Id. ("Title VII addresses the conduct

of employers only and does not impose liability on co-workers....") Id. Vera v. McHugh, 622 F.3d

17 at 25 n. 8 ("Title VII does not create liability against individual employees." (citing Fantini, 557

F.3d at 28–31)). See Ríos v. Municipality of Guaynabo, 938 F. Supp. 2d 235, 251 (D.P.R. 2013).

Plaintiff, cognizable of the fact that it is well established that individual liability may not be imposed

on Defendants Rodríguez, Millán, Morales and Rivera pursuant to Title VII, does not assert

otherwise. (See Docket No. 113 at 8.)  As Defendants Perza, Millán, Morales and Rivera cannot be

held liable under Title VII, the Municipality is thus the only defendant against whom relief under

Title VII may be granted.

2.    Section 1983

Section 1983 "affords redress against a person who, [acting] under color of state law,

deprives another person of any federal constitutional or statutory right." Medina-Medina v. Puerto

Rico, 769 F. Supp. 2d 77, 82 (D.P.R. 2011); see Omni Behavioral Health v. Miller, 285 F.3d 646,

650–651 (8th Cir.2002) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). Section

1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights

elsewhere conferred. See Graham v. M.S. Connor, 490 U.S. 386, 393–394 (1989).  It creates "no

independent substantive right, but rather, provides a cause of action by which individuals may seek

money damages for governmental violations of rights protected by federal law." Cruz–Erazo v.

Rivera–Montanez, 212 F.3d 617, 621 (1st Cir.2000).

It is well-settled that for a claim to be cognizable under section 1983, the Court must assess:

"(1) whether the conduct complained of was committed by a person acting under the color of state

**Civil No. 11-1756 (GAG)**

1    law; and (2) whether this conduct deprived a person of the rights, privileges or immunities secured

2    by the Constitution or laws of the United States. There are two aspects to this second inquiry: (1)

3    there must have been an actual deprivation of [Plaintiff's] federally protected rights, privileges or

4    immunities, and (2) the conduct complained of must have been causally connected to the

5    deprivation." <u>Medina</u>, 769 F. Supp. 2d at 82; <u>see</u> <u>Gutierrez–Rodriguez v. Cartagena</u>, 882 F.2d 553,

6    559 (1st Cir.1989) (citations omitted).  In turn, this second element of causal connection requires

7    that the plaintiff establish: (1) for each defendant, that the defendant's own actions deprived the

8    plaintiff of his/her protected rights, <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 n. 58 (1978);

9    <u>Gutiérrez–Rodríguez</u>, 882 F.2d at 562; <u>Figueroa v. Aponte–Roque</u>, 864 F.2d 947, 953 (1st

10    Cir.1989); and (2) that the defendant's conduct was intentional, <u>Simmons v. Dickhaut</u>, 804 F.2d 182,

11    185 (1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the

12    plaintiff's constitutional rights. <u>See</u> <u>Gutiérrez–Rodríguez</u>, 882 F.2d at 562.

13        Plaintiff brings a claim under the Fourteenth Amendment's Equal Protection clause through

14    Section 1983 based on an underlying cause of action of sexual harassment under Title VII.  Plaintiff

15    seeks damages and injunctive relief against the Municipality and all named defendants in their

16    individual capacity.   Plaintiff's Section 1983 claims may be precluded since there is a

17    comprehensive and exclusive remedy for Plaintiff's damages in Title VII. <u>Middlesex Co. Sewerage</u>

18    <u>Authority v. Nat. Sea Clammers Ass'n</u>, 453 U.S. 1, 101 (1981).   A Section 1983 suit cannot be

19    based on the same factual grounds that constitute a violation of federal job discrimination laws with

20    comprehensive enforcement procedures, including Title VII.  <u>See</u> <u>Rivera v. City of Wichita Falls</u>,

21    665 F.2d 531 (5th Cir. 1982).[7]  The federal  courts have stated that Title VII is the exclusive remedy

22    for a Title VII claim, precluding a Section 1983 claim.  <u>Rodriguez Torres v. Muniz Gonzalez</u>, 898

23    F. Supp. 2d 433, 437-38 (D.P.R. 2012).  Others have stated that if a Section 1983 claim is permitted,

24

25

26        [7]  Section 1983 claims are permitted along with Title VII claims only when the former claim is based on a violation of constitutional or statutory law independent of Title VII,  such as violations of rights guaranteed by the First and 14th

27    Amendments.  <u>See</u> <u>Johnston v. Harris County Flood Control Dist.</u>, 869 F.2d 1565 (5th Cir. 1989); <u>Carrero v. New York City</u> <u>Housing Authority</u>, 890 F.2d 569 (2d Cir. 1989).

28                            17

Civil No. 11-1756 (GAG)

1   the underlying law must be used and cannot be circumvented.  Id. See Henley v. Brown, et al., 686

2   F.3d 634, 642 (8th Cir.2012) (Title VII claims are the exclusive remedy, not Section 1983, unless

3   there is a claim for violation of constitutional rights; plaintiff may not circumvent the requirements

4   of the law by dressing a case under Section 1983, which does not comply with the requirements of

5   Title VII).   Hence, the principles of law of Title VII must be used. See Wright v. Rolette County,

6   417 F.3d 879, 884–885 (8th Cir.2005).  The court addresses Plaintiff's Section 1983 claims in turn.

7                   a.       Municipal Liability

8        A municipality is subject to liability under Section1983 only when the violation of the

9   Plaintiff's federally protected right can be attributable to the enforcement of a municipal policy,

10  practice, or decision of a final municipal policy maker.  Monell, Id. "[I]t is when execution of a

11  government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

12  may fairly be said to represent official policy, inflicts the injury that the government as an entity is

13  responsible under §1983.  Id. at 694.   A municipality may be held liable under §1983 *only* when

14  the enforcement of the municipal policy or practice was the "moving force" behind the violation of

15  the plaintiff's federally protected right. Bd. of Co. Comm'rs v. Brown, 520 U.S. 397, 400 (1997)

16  (emphasis added); City of Canton v. Harris, 489 U.S. 378, 389 (1989).  The courts have also

17  described this causal connection as a "direct causal link." Canton, 489 U.S. at 385 (there must be

18  a "direct causal link between the municipal policy or custom and the alleged constitutional

19  deprivation").  The municipal policy or practice requisite is often very difficult to satisfy. See

20  Wimberly v. City of Clovis, 375 F. Supp. 2d 1120, 1127 (D.N.M. 2004) ("[T]he Monell standard

21  is very difficult for any plaintiff to reach.  Even plaintiffs that proceed to trial against individual

22  defendants often are unable to keep the municipality in the case.").

23       Plaintiff argued that the Municipality is sued under §1983 based on the Monell landmark

24  decision cited above.  More specifically, Plaintiff asserted that the Municipality is liable "when

25  execution of a government's policy or custom, whether made by its lawmakers or by those whose

26  edicts or acts may fairly be said to represent official policy" inflicted injury on the plaintiff. (See

27  Docket No. 93 at 11-12.)  Plaintiff only references two instances under §1983 whereby the

28

18

**Civil No. 11-1756 (GAG)**

1  Municipality may be liable for Rivera's acts: (1) based on a municipal "custom or usage"; and (2)

2  inadequate training. (<u>See</u> Docket No. 93 at 12.)

3  **i.    Custom, Practice or Usage**

4        In <u>Monell</u>, the Supreme Court held that Section1983 municipal liability may be based on a

5  municipal "custom or usage" having the force of law, even though it has "not received formal

6  approval through the body's official decision-making channels." 436 U.S. at 691.  The Supreme

7  Court acknowledged that "an act performed pursuant to a 'custom' that has not been formally

8  approved by an appropriate decision maker may fairly subject a municipality to liability on the

9  theory that the relevant practice is so widespread as to have the force of law." <u>Bd. of Co. Comm'rs</u>,

10  520 U.S. at 404 (1997).  The critical issue is whether there was a particular custom or practice that

11  was "so well settled and widespread that the policymaking officials of the municipality can be said

12  to have either actual or constructive knowledge of it yet did nothing to end the practice." <u>Bordanaro</u>

13  <u>v. McLeod</u>, 871 F. 2d 1151, 1156 (1st Cir. 1989).

14        Plaintiff's theory of municipal liability rests on the contention that "a review of the totality

15  of the evidence could lead a reasonable jury to conclude that the Municipality was governed under

16  a spell of a policy of inaction and reckless disregard to its own established personnel processes and

17  proceedings and that the injuries suffered by Plaintiff resulted as a natural consequence of this

18  unwritten municipal custom." (Docket No. 93 at 12.)   Plaintiff relies on the fact that upon

19  Guadalupe's call to Morales to complain about Rivera, Morales advised Guadalupe to have Plaintiff

20  call him and did not refer her to Human Resources.  Plaintiff argues this "may be reasonably

21  construed as illustrative of the Municipality's unwritten policy of inaction, of the Municipality's

22  unwritten custom of reckless disregard towards the constitutional rights of its employees, and a

23  manifestation of the Municipality custom of disregarding and not following its own procedures."

24  <u>Id.</u> at 13.

25        The parties agree that Morales told Guadalupe to have Plaintiff give her a call.  It is

26  uncontested that Plaintiff did not do so.  The court will not venture as to what may have happened

27  had Plaintiff called Morales back as it is mere speculation.  The court notes, however, that

28
19

**Civil No. 11-1756 (GAG)**

1    Guadalupe's call to Morales is the principal incident Plaintiff uses to evince the Municipality's

2    alleged illegal 'custom or practice'.  Plaintiff alleges that Rodríguez described the proper procedure

3    to follow in case of a sexual harassment allegation.  (Docket No. 96 at 19.)  Plaintiff asserts that

4    Morales did not follow it.  Plaintiff uses Morales' "call me" comment to suggest that the

5    Municipality's own highest officers were not "on the same page" regarding the Municipality's

6    policies and procedures concerning sexual harassment.  This is insufficient to demonstrate a practice

7    that "is so widespread as to have the force of law."  See Bd. of Co. Comm'rs, 520 U.S. at 404.

8         Plaintiff also brings to the court's attention that after Guadalupe allegedly told Millán about

9    Rivera's conduct towards females, the sexual harassment policy was not activated.  (See Docket No.

10   93 at 15.)  However, this fact is disputed by Plaintiff's assertion that Millán did not know of the

11   alleged sexual harassment taking place at the Lighthouse until *after* Plaintiff filed her complaint and

12   was informed by Human Resources.  (See Docket No. 96 at 15-16.)  Even taking Plaintiff's

13   allegation as true, the evidence brought forth to sustain her Section 1983 claims does not hold water.

14   Plaintiff failed to present evidence of sex discrimination by the Municipality.

15        Plaintiff failed to present the requisite evidence to establish that the Municipality's alleged

16   unlawful "practice" was "so well settled and widespread that the policymaking officials of the

17   municipality can be said to have either actual or constructive knowledge of it yet did nothing to end

18   the practice."  See Bordanaro, 871 F. 2d at 1156.  So, Plaintiff's evidence is also insufficient to

19   impute constructive knowledge to the Municipality's policy makers to hold the Municipality liable

20   under §1983.  If, in fact, there was a widespread practice of inaction and disregard to the

21   constitutional rights of females, Plaintiff should at least have presented other instances where the

22   Municipality may have incurred in such illegal practice.   In other cases, for instance, plaintiffs

23   presented statistical studies regarding the protracted actions they denounced. (See Sorlucco v.

24   NYPD, 971 F. 2d 864 at 872 (2nd Cir. 1992)).  Here, Plaintiff presented one incident of sexual

25   harassment and the Municipality's alleged response to show a widespread 'custom or practice' of

26   ignoring its own policies and procedures.  Plaintiff did not present evidence of long the alleged

27

28                                                      20

**Civil No. 11-1756 (GAG)**

1  "practice" had existed.  (See Gillete v. Delmore, 979 F. 2d 1342 (9th Cir.), *cert. denied*, 510 U.S.
2  932 (1992).

3       As such, Plaintiff failed to support a finding, as required by law, that the Municipality had
4  an established 'custom or practice' of inactivity regarding sexual harassment "so widespread as to
5  have the force of law."   See Bd. of Co. Comm'rs, 520 U.S. at 404.   Contrary to Plaintiff's
6  contention, the evidence she provided is insufficient for a jury to reasonably infer an
7  unconstitutional Municipality practice of sex discrimination or a 'policy or custom' of inaction
8  towards harassment and complete disregard to the constitutional rights of its employees, specially
9  females.[8]  Consequently, Plaintiff's evidence is insufficient to create a triable issue of fact to hold
10  the Municipality liable for Section 1983 claim based on "custom or usage."

11                              **ii.       Inadequate Training**

12       In Canton, the Supreme Court held that deliberately indifferent training may give rise to
13  §1983 municipal liability. 489 U.S. at 378 (1989). The Court held that "there are limited
14  circumstances in which an allegation of a "failure to train" can be the basis for liability under
15  §1983." Id.  The Court held that "only where the failure to train amounts to *deliberate indifference*
16  to the rights of persons with whom the Municipality come in contact" and that deliberate
17  indifference was the moving force of the violation of the plaintiff's federally protected right. Id. at
18  388 (emphasis added).   The Court expressed that Plaintiff must demonstrate specific training
19  deficiencies and either: (1) a pattern of constitutional violations of which policy-making officials
20  can be charged with knowledge; or (2) that training is obviously necessary to avoid constitutional
21  violations. Id. at 390.  The plaintiff must show that "the need for more of different training was so

22
23
_____

24       [8] The Fifth Circuit issued a similar ruling in Pineda v. City of Houston, 291 F. 3d 325, 329-31 (5th Cir. 2002), *cert.*
     *denied*, 123 S. Ct. 892 (2003).  Even when the plaintiff produced reports of eleven warrantless entries into residences to
25  support its claim that a task force was engaged in a pattern of unconstitutional searches, the court found that the evidence did
     not support a finding of a 'custom or practice' within the City sufficient to impose liability under §1983. Id. In the case at bar,
26  Plaintiff only presented one situation, nothing more.  Thus, a finding that this constitutes custom or usage that has force of law
     within the Municipality is simply unsustainable.

27

28                                            21

Civil No. 11-1756 (GAG)

1  obvious, and the inadequacy so likely to result in the violation of constitutional rights" as to amount

2  to a municipal policy or deliberate indifference to the employee's constitutional rights.  Id.

3       What is more, the Supreme Court held in Canton that negligent or even grossly negligent

4  training does not by itself give rise to a §1983 municipal liability claim.  The Court held that

5  plaintiff must also demonstrate a sufficiently close causal connection between the deliberately

6  indifferent training and the deprivation of plaintiff's federally protected right.  Id. at 391-92.  The

7  Court also held that a plaintiff must identify a particular deficiency in the training program and

8  prove that the identified deficiency was the actual cause of the Plaintiff's constitutional rights injury.

9  Id. at 390-91.  Pursuant to Canton, a plaintiff will not prevail merely by showing that the particular

10 officer was inadequately trained, or that there was negligent administration of an otherwise adequate

11 program, or that the conduct resulting in the injury could have been avoided by more or better

12 training.  Id.  The federal courts are not to become involved "in an endless exercise of second-

13 guessing municipal employee-training programs." Id. at 392.  In sum, Canton imposes stringent

14 standards for fault ("deliberate indifference") and causation ("moving force").

15      Plaintiff argues that where a "claim of municipal liability is predicated upon the failure to

16 act (in this case failure to train), the requisite degree of fault must be shown by proof of a

17 background of events and circumstances that establish that the policy of inaction is the functional

18 equivalent of a decision by the city itself to violate the Constitution."  Canton, 489 U.S. at 394-95.

19 The failure to train must bear a "close causal connection to the violation of constitutional rights."

20 Id.

21      In this case, Plaintiff contends that the evidence shows the Municipality failed to train its

22 employees in preventing, halting, and deterring sexual harassment in the workplace. (See Docket

23 No. 93 at 13.)  In support thereof, Plaintiff asserts the following: (1) she did not receive a copy of

24 the sexual harassment policy nor was she trained; (2) Millán testified she did not remember whether

25 the Municipality provided her with a copy of the sexual harassment policy; (3) Guadalupe testified

26 that an informative poster concerning sexual harassment was not included in the Lighthouse; and

27

28                                               22

**Civil No. 11-1756 (GAG)**

1   (4) Guadalupe testified he did not receive a copy of the sexual harassment policy nor training related

2   therewith.  Id.  Even if the court found these assertions as specific training deficiencies, Plaintiff

3   still has to demonstrate a pattern of constitutional violations that may lead a jury to conclude that

4   the Municipality's policy-making officials should be charged with knowledge thereof, or that

5   training was obviously necessary to avoid constitutional violations. See Canton, 489 U.S. at 390.

6   Plaintiff only brought forth her sexual harassment allegation to evidence constitutional violations

7   on the part of the Municipality.  As such, she fails to demonstrate a pattern of constitutional

8   violations.   Plaintiff also failed to present any evidence to support a finding that proper training

9   would have prevented her constitutional violations.

10        Even if the court found that the Municipality failed to adequately disseminate its sexual

11  harassment policy and properly train its employees, the Canton Court made it pellucidly clear that

12  negligent or even grossly negligent training does not, by itself, give rise to municipal liability under

13  §1983.  Id.  Plaintiff has to also demonstrate the Municipality's "deliberate indifference" towards

14  training, and she has failed.  Furthermore, Plaintiff had to meet the high standard of causation, i.e.,

15  that the deliberately indifferent training was the moving force behind Plaintiff's constitutional rights'

16  violation.  Id at 392.  As the Municipality correctly pointed out, Rivera acted in contravention of the

17  Municipality's established policy against sexual harassment.  Therefore, the court cannot find that

18  Plaintiff's injuries were directly caused by the Municipality's "deliberate indifference" to train its

19  employees.  Rather, Plaintiff's injuries were more casually connected to the illegal acts of Rivera,

20  a custodian, which contravened municipal policy.  Plaintiff failed to meet the requisite standard to

21  impose liability upon the Municipality pursuant to Section1983.   Accordingly, the court

22  **DISMISSES** Plaintiff's Section 1983 claims against the Municipality and **GRANTS** the

23  Municipality's Motion for Summary Judgment at Docket No. 63 as it pertains such claims.[9]

24

25

26  _____

27        [9]  In addition, as the court discusses below, Plaintiff's Section 1983 claim is time-barred.

28                                        23

Civil No. 11-1756 (GAG)

1

b.   Individual Liability

2

Defendants Rodríguez, Millán and Morales aver that Plaintiff's Section1983 claim should

3 be dismissed because: (1) Plaintiff's claim is time barred; and (2) Plaintiff failed meet the

4 requirements of a cognizable Section1983 claim. (See Docket No. 83 at 17, 25.)  Defendant Rivera

5 also alleges that Plaintiff's Section 1983 claims are time barred.  (See Docket No. 85 at 4.)

6 Rodríguez, Millán, Morales and Rivera (herein collectively referred to as "individual defendants")

7 claim that Plaintiff's Section 1983 claims are time barred because the extrajudicial claim presented

8 by Plaintiff did not toll the statute of limitations against them in their personal capacities.[10] (See

9 Docket Nos. 83 at 23; No. 85 at 4.)

10

**i.     Section 1983 claim is time barred**

11

It is settled that Section 1983 does not provide a statute of limitations.  Rodriguez, 898 F.

12 Supp. 2d at 436.  However, the Supreme Court held that courts must borrow the State's limitations

13 period governing personal injury actions. (See Wilson v. García, 471 U.S. 261, 266 (1985).  Thus,

14 state law statutes of limitations govern suits in federal courts arising under Section 1983.  Benitez-

15 Pons v. Com. of Puerto Rico, 136 F. 3d 54, 59 (1st Cir. 1998.)  In Puerto Rico, the applicable

16 limitation period for tort actions is one year.  31 P.R. Laws Ann. § 5141; see also Carreras–Rosa v.

17 Alves–Cruz, 127 F.3d 172, 174 (1st Cir.1997); Torres v. Superintendent of Police, 893 F.2d 404,

18 406 (1st Cir.1990).  Therefore, the one-year personal injury statute of limitations in tort actions

19 governs Section 1983 claims.  See Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st

20 Cir. 2004);  Guzman–Rivera v. Rivera–Cruz, 29 F.3d 3, 4–5 (1st Cir.1994).

21

Federal law determines the date on which the claim accrued.  Rivera–Muriente v.

22 Agosto–Alicea, 959 F.2d 349, 353 (1st Cir.1992).  The limitations period begins to run "one day

23

24

_____

25     [10]  Although Plaintiff does not raise the argument that her administrative filing with the EEOC tolled her Section
1983 claims, the court notes that the case law makes clear that  "the EEOC has no jurisdiction over claims brought pursuant
26 to § 1983, . . . a charge filed with the EEOC or Puerto Rico Anti–Discrimination Unit cannot serve to toll the limitations period
for a § 1983 claim." Sifre v. Department of Health, 38 F.Supp.2d 91, 96 (D.P.R.1999) (citing Leon-Nogueras v. Univ. of
27 Puerto Rico, 964 F. Supp. 585, 587 (D.P.R. 1997).

28

Civil No. 11-1756 (GAG)

1    after accrual" which is the date when the plaintiff "knows or has reason to know of the injury which

2    is the basis for his claim." <u>Benitez–Pons</u>, 136 F.3d at 59; <u>Rodriguez-Garcia</u>, 354 F.3d at 96-97

3    (citing  <u>Rodriguez Narvaez v. Nazario</u>, 895 F.2d 38, 41 n. 5 (1st Cir.1990).  <u>See also</u> <u>Ramos v.</u>

4    <u>Roman</u>, 83 F.Supp.2d 233, 238 (D.P.R. 2000). The statute of limitations applicable is one year from

5    the date that the employee is notified in writing of his/her discharge or from the alleged Section 1983

6    violation. <u>Rodriguez Torres</u>, 898 F. Supp. at 437.  <u>See</u> <u>Chardon v. Fernandez,</u> 454 U.S. 6, 7 (1982).

7         Here, Plaintiff was never discharged nor did she quit.  Plaintiff claims the alleged acts of

8    sexual harassment began in December 2009 and continued until June 2010, when she filed her

9    complaint.  The record shows that her grievances ceased in June 2010 when Rivera was transferred

10   out of the Lighthouse and since then Plaintiff had no further contact with Rivera. Thus, the

11   limitations period for Plaintiff's Section 1983 claims began to run no later than June 2010, when

12   Plaintiff's harassment ended.  Plaintiff did not file this suit until August, 4, 2011, over a year later.

13   To save her Section 1983 claim, Plaintiff argues her filing of an extrajudicial claim letter dated April

14   26, 2011 tolled the statute of limitations on her Section 1983 claims. (<u>See</u> Docket No. 113 at 20.)

15        It is well settled that tolling of the Section 1983 statute of limitations is governed by state

16   law.  <u>See</u>, e.g., <u>Benitez–Pons</u>, 136 F.3d at 59; <u>Torres</u>, 893 F.2d at 407.  Under the Puerto Rico Civil

17   Code, extrajudicial claims toll the statute of limitations. P.R. Laws Ann. tit. 31, § 5303 (1991);

18   <u>Benitez–Pons</u>, 136 F.3d at 59.  However, for an extrajudicial claim to toll a statute of limitations on

19   a judicial claim, causes of action and relief requested must be the same. 31 L.P.R.A. § 5303. <u>Id.</u> at

20   54.  The extrajudicial claim must be "identical" to the claim actually filed in court.  <u>Id</u> at 59.

21        The First Circuit has held that to be "identical" the claims asserted in the subsequent action:

22   (1) "must seek the same form of relief" as the first action; (2) "must be based on the same

23   substantive claims"; and (3) "provided that other Puerto Rico tolling statutes do not rescue the

24   claims on other grounds . . . must be asserted against the same defendants in the same capacities;

25   new defendants should not be added." <u>Rodriguez v. Suzuki Motor Corp.</u>, 570 F.3d 402, 409 (1st Cir.

26

27

28

**Civil No. 11-1756 (GAG)**

2009). See Rodriguez-Garcia, 354 F.3d at 98.[11]  "[T]he tolling is effective with regard only to identical causes of action. The statute of limitations is not tolled for all claims arising out of the same facts. . . ." Fernandez v. Chardon, 681 F.2d 42, 49 (1st Cir.1982).  In other words, "to toll the statute the action must be the case at bar, and not merely a somewhat related action arising from the same facts," Ramirez de Arellano v. Alvarez de Choudens, 575 F.2d 315, 320 (1st Cir.1978).  If these requirements are met, the filing of a complaint results in the statute of limitations running anew from the time that action comes to a definite end. Rodriguez-Garcia, 354 F.3d at 97.

This identicality requirement serves to prevent plaintiffs from circumventing the notice function of the statutes of limitations by asserting different claims in belated federal court complaints. Suzuki Motor Corp., 570 F.3d at 409;  Rodriguez Narvaez, 895 F.2d at 43 (statutes of limitations exist to prevent defendants from being surprised by long-dormant causes of action). An extrajudicial letter must give fair notice of the claims that are subsequently raised. Santana-Castro v. Toledo-Davila, 579 F.3d 109, 115 (1st Cir. 2009).   Plaintiff may not sidestep the statutes of limitations' notice function by asserting different claims in belated federal court complaints. See Torres-Santiago v. Diaz-Casiano, 708 F. Supp. 2d 178, 185 (D.P.R. 2009).  "[T]olling provisions [are] interpreted restrictively against the person invoking their protection," the requirements for making an extrajudicial claim are strict.  Nieves-Vega v. Ortiz-Quinones, 443 F.3d 134, 137 (1st Cir. 2006). See Rodriguez Narvaez, 895 F.2d at 43.

The court now considers whether Plaintiff's extrajudicial letter is sufficiently identical to her subsequent federal complaint, to meet the identicality of parties requirement.  Individual defendants allege that Plaintiff's April 26, 2011 extrajudicial letter does not toll the statute of limitations with regards to them in their personal capacities.  Plaintiff addressed her extrajudicial claim to Rodríguez as Mayor of the Municipality, Millán as Director of the Office of Tourism and Rivera as Worker of

---

[11] The Supreme Court of Puerto Rico has approved this identicality requirement. Rodriguez-Garcia, 354 F.3d at 97. See Cintron v. Estado Libre Asociado de P.R., 27 P.R. Offic. Trans. 582, 127 P.R. Dec. 582 (1990) (holding that a timely filed extrajudicial claim did not toll the statute of limitations for a suit in the Puerto Rico courts because it did not "pursue identical claims").

**Civil No. 11-1756 (GAG)**

the Office of Tourism. (<u>See</u> Docket No. 137-10 at 1.)  The court, however, notes that the letter was sent via certified mail to Hans Mercado, the Municipality's attorney, and mailed to his P.O. Box address.  Plaintiff addressed the letter to Rodríguez, Millán and Rivera all in their official capacities as employees of the Municipality.  Moreover, in her extrajudicial letter Plaintiff included language whereby she attested that her extrajudicial claim was for "damages suffered in the workplace as a result of negligent acts and/or omissions, intentional and discriminatory acts *by officials and employees of the Municipality* of Cabo Rojo *during the performance of their duties*." (emphasis added) (<u>See</u> Docket No. 137-10 at 1.)

For tolling purposes, an extrajudicial claim *must* be notified to the defendant if it is to have a tolling effect.  <u>See</u> <u>Rodríguez-Narváez</u>, 895 F.2d at 44; <u>Leon-Nogueras v. Univ. of Puerto Rico</u>, 964 F. Supp. 585, 587 (D.P.R. 1997).  The First Circuit has summarized the applicable Puerto Rico doctrine as to extrajudicial claims as follows:

> [A]n extrajudicial claim does in fact include virtually any demand formulated by the creditor. The only limitations are that the claim must be made by the holder of the substantive right (or his legal representative), . . . , it must be addressed to the debtor or passive subject of the right, not to a third party, . . . , and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit.

<u>Rodríguez-Narváez</u>, 895 F.2d at 44; <u>Leon-Nogueras</u>, 964 F. Supp. at 587. Accordingly, the statute of limitations will not be tolled against a defendant who did not receive notice of the extrajudicial claim.  In this case, there is no evidence that individual defendants were personally notified of the letter.  Rivera raises this argument and alleges that an extrajudicial claim notified by Plaintiff to the Municipality– or its Mayor in her official capacity– cannot serve to toll the statute of limitations with regards to him. (<u>See</u> Docket No. 85 at 4.)

The court begins by noting that Plaintiff's extrajudicial claim aimed to recover money for the alleged damages suffered for being the victim of retaliation and hostile work environment. (Docket No. 137-10).  Nevertheless, Plaintiff's complaint "is an action for money damages, injunctive and declaratory relief." (Docket No. 3.)  The First Circuit Court has held that if a party seeks a cause of action or remedy in an extrajudicial claim that is different from the one later sought

**Civil No. 11-1756 (GAG)**

in a judicial proceeding, the statute of limitations is not tolled. <u>Benitez-Pons</u>, 136 F.3d at 60.  In

concluding that the Section 1983 claim was time barred, the Court stated in <u>Torres</u>:

> [T]he district court correctly held that the extrajudicial claim must claim the same relief later requested in the federal suit. The statute of limitations for Section 1983 claim [sic] is not tolled if the remedy requested in both suits is different.... The record supports the district court's finding that the plaintiff requested two distinct remedies. . . Given that these remedies were not identical, there was no tolling and the prescription period expired. . .

893 F.2d  at 407.  <u>See</u> <u>Benitez-Pons</u>, 136 F.3d at 60-61.  The First Circuit held that an

extrajudicial letter failed the first requirement for tolling purposes-identicality of relief- because it

sought "different relief from the relief later requested in the lawsuit."  <u>Nieves-Vega v.</u>

<u>Ortiz-Quinones</u>, 443 F.3d 134, 137 (1st Cir. 2006).  The First Circuit has held several times that an

extrajudicial claim seeking only equitable relief does not toll the statute of limitations where the

subsequent complaint also seeks damages. <u>Nieves-Vega</u>, 443 F.3d at 137. <u>See</u> <u>Benitez-Pons</u>, 136

F.3d at 59-61.  This is so because an extrajudicial claim requesting only injunctive relief does not

give the defendants "fair notice that [they] might be called upon to defend a damages suit, with

different issues not applicable to a suit for injunctive relief." <u>Id.</u> at 137.  This case presents a similar

scenario.  Here, Plaintiff's extrajudicial letter only sought money damages.  However, in her

subsequent federal complaint she sought damages *and* injunctive and declaratory relief.  Plaintiff

failed to seek the same remedies in her federal complaint as she had sought in her extrajudicial letter.

What may have functioned as an extrajudicial claim under Puerto Rico law, tolling the statute of

limitations, failed to do so because the relief sought in Plaintiff's extrajudicial claim was different

from the remedy later sought in the instant judicial proceeding.

    In addition, Plaintiff's extrajudicial claim was addressed to Rodríguez, Millán and Rivera

in their official capacity, however, the letter was sent to Hans Mercado's P.O. Box address.  It is

undisputed that Plaintiff failed to address her extrajudicial letter to Morales.  Moreover, Plaintiff

does not allege that individual defendants knew about the extrajudicial letter or its contents.  Puerto

Rico law is clear that an extrajudicial letter "must be addressed to the . . . passive subject of the right,

not to [a] third party." <u>Rodríguez-Narváez</u>, 895 F.2d at 44;  <u>Santana-Castro</u>, 579 F.3d at 116

28

Civil No. 11-1756 (GAG)

1   (internal citations omitted).  Subordinate officers are not held to be on constructive notice of claims
2   made against them in an extrajudicial letter to a supervising officer. Id. at 116-17.  Plaintiffs' failure
3   to allege that individual defendants knew of the claims against them as included in the extrajudicial
4   letter is fatal to her claim. Id. at 116.  In this case, individual defendants were not put on notice of
5   Plaintiff's claims against them in their personal capacity.  Therefore, Plaintiff's extrajudicial letter
6   was insufficient to toll the statute of limitations period against them in such capacity.

7       In addition, Plaintiff waited until August 4, 2011 to file her federal complaint and assert
8   federal claims against the individual defendants in their personal capacity.  In her federal complaint,
9   Plaintiff failed to name the same defendants in the same capacities as she did in her extrajudicial
10  claim.  In her federal complaint, Plaintiff included claims against two new defendants: Morales in
11  his personal capacity and the Municipality. (See Docket No. 3.)  More importantly, her federal
12  complaint included claims against Rodríguez, Millán and Rivera all in their *personal capacity*, as
13  opposed to their official capacity.  Ordinarily, Section 5303 would not toll the statute of limitations
14  as to these additional claims. See Rodriguez-Garcia, 354 F.3d at 100.  Defendants not included  in
15  the extrajudicial claim cannot be expected to be on notice of plaintiffs' [instant] claims. See id. And
16  defendants sued only in their official capacities in the original complaint (in this case, in the
17  extrajudicial claim) cannot be expected to be on notice of the very different issues raised by claims
18  against them in their personal capacities. See id.

19      This case is  similar to Rodriguez-Garcia. 354 F.3d at 100.  Here, Plaintiff's extrajudicial
20  letter was addressed to Rodríguez, Millán and Rivera in their official capacities as Municipality
21  employees.  To the contrary, in her subsequent federal complaint she sought relief against the
22  Municipality and Rodríguez, Millán, Rivera and Morales all in their personal capacities.  In sum,
23  Plaintiff pressed the instant federal complaint against the individual defendants all in their personal
24  capacities, however, she sought relief against them in their official capacity in her extrajudicial
25  claim.  As such, Plaintiff failed to seek the same causes of action against the same defendants in the
26  same capacities in her extrajudicial claim and her subsequent federal complaint.  Puerto Rico law

27

28

Civil No. 11-1756 (GAG)

1   requires sufficient detail "to put defendant on notice of the general nature of their claims." <u>Santana-</u>

2   <u>Castro</u>, 579 F.3d at116.   Plaintiff's extrajudicial claim against the individual defendants in their

3   official capacity does not give such  defendants "fair notice" that they might be called upon to

4   defend a suit in their personal capacity.[12]   Plaintiffs extrajudicial letter must give fair notice of the

5   claims she subsequently raised in her federal complaint. <u>Santana-Castro</u>, 579 F.3d at 115.   The

6   purpose of [equitable] tolling is to enable a plaintiff to proceed against a defendant who was already

7   put on notice about the potential claims against him. <u>Rivera-Fernandez v. Autonomous Municipality</u>

8   <u>of Loiza</u>, CIV 07-1935 (JP), 2009 WL 1076681 (D.P.R. 2009).

9       In this case, the individual defendants were *not* put on proper notice of the claims Plaintiff

10   is now pursuing against them in the federal complaint because she did not assert the same claims

11   against the same defendants in the same capacities as she had in her extrajudicial claim.   Plaintiff

12   failed to put the individual defendants on notice of the claims brought against them, thus her

13   extrajudicial letter was insufficient to toll the statute of limitations against them.   This is so, because

14   an extrajudicial claim asserted against certain defendants in their official capacity does not give

15   defendants "fair notice" that [they] might be called upon to defend a suit in their personal capacity.

16       Consequently, Plaintiff's extrajudicial letter failed to toll the statute of limitations. What may

17   have functioned as an extrajudicial claim under Puerto Rico law, tolling the statute of limitations,

18   failed to do so because Plaintiff failed to meet the identicality of parties requirement.   And so,

19   Plaintiff's extrajudicial claim did not effectively toll the statute of limitations on her Section 1983

20   claims against the individual defendants.   Plaintiff failed to satisfy applicable Puerto Rico tolling

21

22       [12]  Early and explicit notice permits governmental official defendants who are subject to personal liability for
23   monetary damages to assess matters crucial to their litigation strategy, including the propriety of raising particular defenses
     available only to governmental officials sued in a particular capacity.  For example, while an official-capacity defendant may
24   raise the defense of sovereign immunity, a personal-capacity defendant may assert "objectively reasonable reliance on existing
     law," a defense not available to official-capacity defendants. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167, 105 S.Ct. 3099
25   (1985) (setting forth defenses to liability under § 1983 to "illustrate the basic distinction between personal- and official-
     capacity actions").  Defendants with early notice of potential personal liability may also assess "the availability of insurance
26   coverage and whether there are potential conflicts of  interest that might require separate representation of defendants."
     <u>Charron v. Picano</u>, 811 F.Supp. 768, 772 (D.R.I.1993). <u>See</u> <u>Powell v. Alexander</u>, 391 F.3d 1, 21-22 (1st Cir. 2004).

27

28                                                    30

**Civil No. 11-1756 (GAG)**

1  statue, which requires that there be identity of parties. See <u>Rodriguez-Garcia</u>, 354 F.3d at 100.

2  Therefore, Plaintiff's Section 1983 claims against individual defendants are time barred.

3                          **i.    Failure to meet Section1983 requirements**

4        The court found that Plaintiff' 1983 claims against the individual defendants are time barred,

5  however, for argument sake, the court will address Plaintiff's remaining Section 1983 allegation:

6  that Rodríguez, Millán and Morales (hereinafter "Defendant Supervisors") are liable for Plaintiff's

7  constitutional violations pursuant to the Fourteenth and/or Fifth Amendment based on the

8  supervisory liability doctrine. (Docket No. 3.)  In turn, Defendant Supervisors allege they cannot be

9  held liable under the doctrine of supervisory liability since their conduct as supervisors does not

10  demonstrate a "reckless or callous indifference", which is the standard necessary to find Section

11  1983 liability. (<u>See</u> Docket No. 83 at 16.)  They also allege that Plaintiff failed to meet the Section

12  1983 threshold because by her own admission, Millán, and/or any other municipal personnel in

13  hierarchical chain were not privy of any claims or notices about Rivera's alleged conduct towards

14  Plaintiff. <u>See id</u>.

15        The question before the court is to what extent Defendant Supervisors can be held

16  responsible for the acts of others under Section 1983 on account of their supervisory roles.  The First

17  Circuit has considered the standard of liability for supervisory officials under Section 1983.

18  <u>Voutour v. Vitale</u>, 761 F.2d 812 (1st Cir.1985).  The Court ruled that in order to hold the supervisory

19  defendant (in that case, a police chief) liable under Section 1983, the plaintiff had to show that: (1)

20  "the conduct complained of was committed by a person acting under color of state law; and (2) [that]

21  this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or

22  laws of the United States." <u>Id</u>. at 819 (citation omitted).  The second inquiry has "two distinct

23  elements," namely whether there was a deprivation and whether the defendant's conduct caused this

24  deprivation. <u>Id</u>.  The Court concluded that plaintiff could establish causation by showing a "pattern

25  of police violence so striking as to allow an inference of supervisory encouragement, condonation,

26  or even acquiescence," <u>id</u>. at 820 (footnote and citation omitted); or by showing "gross negligence

27

28

**Civil No. 11-1756 (GAG)**

[of the defendant] amounting to deliberate indifference. . . ." Id. See also Kibbe v. City of Springfield, 777 F.2d 801 (1st Cir.1985) (harm allegedly caused by policy of gross negligence in police training can meet standard of causation under 42 U.S.C. § 1983).

Defendant Supervisors contend that the evidence in record fails to support a claim against them based on supervisory liability under Section 1983 because Plaintiff failed to present facts or evidence that establish personal involvement and have failed to otherwise show supervisory liability. (Docket No. 83 at 17).  If such a state official *directly* engaged in sexual harassment or sexual discrimination, he would, of course, be subject to Section 1983 liability.  Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 901-02 (1st Cir. 1988).  Plaintiff, however, does not contend that Defendant Supervisors were personally involved in the sexual harassment she suffered since Plaintiff admits it was Rivera the only one who harassed her and all of the alleged acts of harassment and discrimination were committed by Rivera and not Defendant Supervisors.  Rather, Plaintiff argues that Defendant Supervisors are liable under Section 1983 for the violation of Plaintiffs' Equal Protection rights on the theory of supervisory liability for their failure to adequately supervise, train, and discipline Rivera. (Docket No. 3).

Absent direct participation, a supervisor may be held liable where: (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference.  Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir.2008); *see also* Hernandez-Lopez v. Pereira, 380 F.Supp.2d 30, 34-35 (D.P.R.2005). "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir.1995).

The court must not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996).  Merely alleging that a supervisor failed to train his subordinates is patently insufficient to establish a Section 1983

Civil No. 11-1756 (GAG)

1   claim against the supervisor. Figueroa-Flores v. Acevedo-Vilá, 491 F.Supp.2d 214, 226

2   (D.P.R.2007); see also Esteras v. Díaz, 266 F.Supp.2d 270 (D.P.R.2003). Here, Plaintiff's amended

3   complaint makes only conclusory allegations that Defendant Supervisors "knew or should have

4   known" about Rivera's illegal sexual conduct but "consistently turned a blind eye." (Docket No.

5   3.) The amended complaint asserted that Defendant Supervisors acting under color of state law

6   deprived Plaintiff's constitutional rights to Equal Protection and her rights to privacy because they

7   knew or should have known about Rivera's illegal and harassing conduct but failed to comply with

8   their duties to investigate and/or correct and/or deter and/or discipline Rivera and/or establish and/or

9   publish and/or disseminate and/or train on a valid anti-harassment policy and procedure and/or failed

10  to take reasonable care to prevent harassment in the workplace. Id.

11          Plaintiff, however, does not fare so well supporting these assertions with proof and evidence

12  on record. Plaintiff intends to press a claim for supervisor liability under Section 1983 but fails to

13  provide much detail in support thereof. Like Municipal liability under Section 1983, there must be

14  sufficient causal link or nexus between the supervisor's wrongful conduct and the violation of the

15  plaintiff's federally protected right. Aponte Matus v. Toledo Davila, 135 F. 3d 182, 192 (1998.)

16  It seems (and defendants do not contest) Plaintiff was the victim of harassment by her co-worker,

17  so, *arguendo*, she meets the first prong for supervisor liability, that a subordinate committed a

18  constitutional violation against her. Bisbal-Ramos v. City of Mayaguez, 467 F. 3d 16, 25 (1st Cir.

19  2006.) However, Plaintiff failed to prove that the Defendant Supervisors' conduct inexorably led

20  to her constitutional violations. Hegarty, 53 F.3d at 1379-80. In other words, Plaintiff failed to

21  satisfy the requisite standard whereby Defendant Supervisors' actions or inactions were

22  "affirmatively linked" to the violation inasmuch as they constituted supervisory encouragement,

23  condonation, acquiescence, or gross negligence amounting to deliberate indifference. Bisbal-

24  Ramos, 467 F. 3d at 25; Toledo Davila, 135 F. 3d at 192.

25          The record is clear that Plaintiff never complained nor informed her supervisor Millán (or

26  any other official) of the sexual harassment she had suffered prior to filing her formal complaint with

27

28                                              33

Civil No. 11-1756 (GAG)

1  Human Resources.  So, aside from Plaintiff's generic assertions that Defendant Supervisors' acts

2  and omissions fit the "deliberate indifference" standard, Plaintiff has not offered any evidence in

3  support, and further, she failed to establish an affirmative link between Defendant Supervisors' acts

4  or omissions and Rivera's alleged violation of Plaintiff's constitutional rights.  Rather, Plaintiff only

5  sets forth generally that Defendant Supervisors' failed to train, supervise and/or discipline

6  Municipality employees.  These "bald assertions" and "unsupportable conclusions" are plainly

7  deficient to survive a motion for summary judgment.  In this case, supervisory liability claims based

8  on Section 1983 are completely unsupported by the record.  Therefore, Plaintiff failed to allege a

9  plausible entitlement to relief under Section 1983 against Defendant Supervisors.

10      In addition,  the court notes that Plaintiff failed to include and/or substantiate allegations for

11  a Section 1983 claim against Rivera in his personal capacity. In her amended complaint, Plaintiff

12  included, in a conclusory manner that "each named defendant is legally liable to plaintiff" under

13  Section 1983. (Docket No. 3 at 10.)  However, Plaintiff only asserted Section 1983 allegations

14  against Defendant Supervisors.  As such, Plaintiff failed to provide any details, elaboration, or legal

15  arguments against Rivera under Section 1983.  It is not enough merely to mention a conclusory

16  argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for

17  the argument, and put flesh on its bones.  U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges

18  are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its

19  arguments squarely and distinctly,' or else forever hold its peace.") Rivera–Gomez v. de Castro, 843

20  F.2d 631, 635 (1st Cir.1988) (quoting Paterson–Leitch Co. v. Massachusetts Municipal Wholesale

21  Elec. Co., 840 F.2d 985, 990 (1st Cir.1988)).

22      Accordingly, the court **GRANTS** Defendant Supervisors' and Rivera's motions for summary

23  judgment at Docket Nos. 81 and 85 regarding Plaintiff's 1983 claims.  Therefore, the court

24  **DISMISSES** Plaintiff's Section 1983 claims against all individually named defendants in their

25  personal capacities.

26

27

28                                    34

**Civil No. 11-1756 (GAG)**

C.    Retaliation

Plaintiff claims that her supervisor, Millán, illegally retaliated against her following the filing of her sexual harassment complaint against Rivera.  Both the Municipality and Defendant Supervisors move the court to dismiss Plaintiff's retaliation claim under Title VII for: (1) failure to exhaust administrative remedies; and (2) failure to state a *prima facie* retaliation claim.  The court addresses both arguments in turn. (Docket Nos. 63 and 81.)

**1.    Failure to Exhaust**

Before an employee may sue in federal court on a Title VII claim, "he [or she] must first exhaust administrative remedies."  Franceschi v. U.S. Dep't. of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008) (citing Love v. Pullman Co., 404 U.S. 522, 523, (1972)). "The Title VII administrative process begins with the filing of an administrative charge before the EEOC." Franceschi, 514 F.3d at 84.  The purpose of filing an administrative charge as a prerequisite to commencing a civil action is to provide defendants "with prompt notice of the claim and to create an opportunity for early conciliation."  Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir.1996). With limited exceptions not relevant here, "failure to exhaust th[e] administrative process 'bars the courthouse door.'"  Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011); see Franceschi, 514 F.3d at 85 (1st Cir.2008) (quoting Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 278 (1st Cir.1999)).

The fact that a complainant files an EEOC charge does not [automatically] open the courthouse door to all claims of discrimination.  See Velazquez-Ortiz, 657 F.3d at 71.  Rather, the scope of the federal court complaint is constrained by the allegations made in the administrative complaint: the former must "bear some close relation" to the latter.  Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir.2005).  The language used in the complaint need not "presage with literary exactitude the judicial pleadings which may follow."  Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 32 (1st Cir. 2009) (quoting Davis v. Lucent Techs., Inc., 251 F.3d 227, 233 (1st Cir. 2001)). But, in order to serve the purposes of the administrative exhaustion requirement—prompt notice to

**Civil No. 11-1756 (GAG)**

1
2
3
4

the agency and an opportunity for early resolution—"the factual statement in [the] written charge should have alerted the agency to [the] alternative basis of discrimination" that the plaintiff raises for the first time in court. Thornton, 587 F.3d at 32 (quoting Davis, 251 F.3d at 233) (first alteration in original).

5
6
7
8
9
10
11
12
13
14

In their requests for summary judgment, the Municipality and Defendant Supervisors argue that Plaintiff's retaliation claim should be dismissed because Plaintiff failed to exhaust the corresponding administrative remedies. The Municipality and Defendant Supervisors allege that Plaintiff's EEOC charge was limited to an allegation of sexual harassment and did not include any facts pertaining to retaliation, therefore, she is impeded from presenting a federal retaliation claim. (Docket Nos. 63 at 7-8; 83 at 19.) Plaintiff alleges she presented a sexual harassment charge before the EEOC in March 2011. (See Docket No. 63-2 at 49-52.) Plaintiff testified that the charge only included facts pertaining to sexual harassment and not retaliation. Id. However, the documents Plaintiff submitted by facsimile for the EEOC's consideration reference a retaliation claim and included a paragraph of the alleged retaliatory acts she suffered. (Docket 119-1.)

15
16
17
18
19
20
21
22
23
24

Plaintiff's purported EEOC retaliation charge is not included in the record, thus the court cannot ascertain the specific allegations of retaliation that Plaintiff set forth. However, Plaintiff alleges that on April 5, 2011 she amended the original [sex discrimination and harassment] charge to include a retaliation claim. (Docket No. 121.) On that same date, Plaintiff's attorney requested a Right to Sue letter to pursue Plaintiff's federal claims. (Docket No. 115-5 at 11-2.) The letter referenced what appears to be two distinct claims: No. 515-2011-00240 and No. 16H2011-00354. Id. Moreover, Plaintiff presented evidence of a Right to Sue letter pertaining to charge No. 16H2011-00354 which Plaintiff references as her sexual harassment claim. (Docket No. 119-5.) Plaintiff also presented evidence of a Right to Sue letter pertaining to a charge with identification No. 515-2011-00240, which she references as her retaliation claim. (Docket No. 119-5.)

25
26
27

Thus, it appears that Plaintiff indeed presented a retaliation charge with the EEOC in addition to her initial sexual harassment charge. If this was not the case the DOJ would have issued

28

**Civil No. 11-1756 (GAG)**

only one Right to Sue letter as opposed to two separate ones, at different dates and referencing two distinct identification numbers.  Plaintiff therefore complied with the administrative exhaustion requirement.

**2**.  ***Prima facie* retaliation claim**

Plaintiff pleads her retaliation claim under 42 U.S.C. § 2000e-3(a), which makes it unlawful for an employer to retaliate against a person who complains about discriminatory employment practices "or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing'"  Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 60 (2006) (citing 42 § 2000e-3(a)).  To prove a *prima facie* case of Title VII retaliation, Plaintiff must establish that: (1) he (she) engaged in protected conduct under Title VII; (2) he (she) suffered a materially adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to 'dissuade a reasonable worker from making or supporting a charge of discrimination,'; and (3) that the adverse action taken against plaintiff was causally connected to his or her protected activity.  Fantini, 557 F.3d at 32; Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 168 (D.P.R. 2009) (quoting Mariani-Colon v. DHS, 511 F.3d 216, 223 (1st Cir. 2007)).

"The relevant question is whether [the employer] was retaliating against [the plaintiff] for filing a complaint, not whether he was motivated by gender bias at the time." See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008).  Accordingly, for the purpose of a retaliation claim, the "'relevant conduct is that which occurred *after* the [plaintiff] complained about his superior's [discriminatory]'" acts.  Bibiloni, Id.  Acosta v. Harbour Holdings & Operations, 674 F. Supp. 2d 351, 365 (D.P.R. 2009) (quoting Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006)).  Title VII anti-retaliation standard was recently interpreted and further defined by the Supreme Court: "Title VII retaliation claims must be proved according to traditional principles of *but-for* causation, . . . This requires proof that the unlawful retaliation would *not* have occurred in the absence of the alleged wrongful action or actions of the employer."  Univ. of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2533 (2014) (emphasis added).

Civil No. 11-1756 (GAG)

As to the first element of a *prima facie* retaliation claim, "[a]n employee has engaged in activity 'protected by Title VII if she has either: (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.'" Id. (quoting Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir.1996)).  Protected conduct includes not only formal charges, but also complaints to one's supervisors. Valentín-Almeyda, 447 F. 3d at 94.  Plaintiff satisfies this first element.  It is uncontested that Plaintiff engaged in protected activity under Title VII since in June 2010, she filed a formal sexual harassment complaint with Human Resources denouncing Rivera's illegal conduct.  However, the court is not convinced whether Plaintiff in fact suffered an adverse employment action as a result.  The court addresses this issue as follows.

The Supreme Court has explained that a "materially adverse" action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68 (2006).  (internal quotation marks omitted).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id.  A materially adverse employment action is one that a reasonable employee would have found materially adverse.  Id. The emphasis of the court's reasoning is that it cannot simply be a trivial harm, but must be material, something with real impact.  Id.  The determination of whether a particular action is "materially adverse" must be examined based on the facts present in each case and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Burlington, 548 U.S. at 71,(citation and internal quotation marks omitted).

"Examples of adverse employment actions in the retaliation context include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Morales-Vallellanes v. Potter, 605 F.3d. 27, 36 (1st Cir. 2010) (internal quotations omitted) . "Minor disruptions in the workplace, including 'petty slights,

Civil No. 11-1756 (GAG)

minor annoyances, and simple lack of good manners,' fail to qualify." Id. (quoting Burlington Northern, 548 U.S. at 68). Whether an employment action is "adverse"—and therefore actionable under Title VII—is gauged by an objective standard. Blackie v. Maine, 75 F.3d 716, 725 (1st Cir.1996). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Id. Hence, the court must separate the kind of retaliatory acts that Title VII is meant to protect from "the kind of petty slights or minor annoyances that often take place at work and that all employees experience and that, consequently, fall outside the scope of the antidiscrimination laws". Billings, 515 F.3d at 54. (citations and internal quotations omitted).

The court is not convinced that Plaintiff in fact suffered from an adverse employment action as a result of her engaging in protected activity. Plaintiff does not argue she was terminated or that the conditions of her employment were materially changed. Rather, Plaintiff alleges, although not explicitly, that Millán, her direct supervisor, subjected her to retaliation after she filed a sexual harassment complaint against Rivera. (See Docket No. 3.) Plaintiff's retaliation claim relies on four allegedly adverse employment actions or retaliatory acts by Millán: (1) Plaintiff had to work alone at the Lighthouse; (2) Millán improperly counted Plaintiff's vacation time; (3) Millán did not receive Plaintiff's medical certificates; and (4) Plaintiff received a low score on two of her evaluations. Id. The Municipality, however, argues that Plaintiff did not suffer from a materially adverse employment action. (See Docket No. 63 at 10-11.) On the other hand, Defendant Supervisors allege they took no action to affect Plaintiff's employment and the allegedly retaliatory incidents have no causal link to Plaintiff's claims of sexual harassment. (See Docket No. 83 at 18.)

As for Plaintiff's first example to support a showing of a materially adverse employment action –that she worked alone at the Lighthouse– the Municipality argues this was a one-time occurrence and the circumstances surrounding it preclude a finding of discriminatory animus. (See Docket No. 63 at 11.) Plaintiff testified she worked alone at the Lighthouse per Millán's request a "couple of times". However, Plaintiff admitted she only remembered one instance where Millán

Civil No. 11-1756 (GAG)

1
2
3
4
5
6
7
8

asked her to work alone at the Lighthouse: around the summer of 2010 at a radio amateur's activity. From the record the court cannot pinpoint the exact date of such occurrence, it may well have happened before or after Plaintiff filed her sexual harassment complaint which is critical for her retaliation claim to survive because the relevant conduct is that which occurred after Plaintiff complained about Rivera's harassing behavior. Bibiloni, 661 F. Supp. 2d at 168. Plaintiff also testified that Guadalupe remained working at the Lighthouse with her after the Municipality removed Rivera. More importantly, Plaintiff acknowledged that the times she worked alone at the Lighthouse were when Guadalupe was either sick or absent, which was seldom.

9
10
11
12
13
14
15
16
17
18

The evidence presented by Plaintiff showed–at most– that Plaintiff had to work alone at the Lighthouse per Millán's request on one occasion. Plaintiff did not like it. However, this would hardly dissuade a reasonable worker from making or supporting a charge of discrimination. To the contrary, it resulted in minor, if any, changes in Plaintiff's working conditions. Such a minor "harm or injury" in the workplace is not enough to render this a materially adverse employment action. Also, Plaintiff presented no evidence to show Millán had any retaliatory animus or was driven to punish Plaintiff for complaining about Rivera. The evidence on record "is insufficient to prove that, viewed objectively", working alone at the Lighthouse on a few occasions (and under the circumstances described by Plaintiff) constitutes an adverse employment action. See Marrero, 304 F.3d at 25.

19
20
21
22
23
24
25
26
27

Second, Plaintiff alleges that Millán incorrectly counted her use of leave and vacation time. She also alleges that Millán's evaluation of her work performance improperly showed increased devaluation of her work. (Docket No. 3 at 9.) The First Circuit has explained that "[a]dverse employment actions include . . . 'unwarranted negative job evaluations' . . ." Marrero, 304 F.3d at 23; White v. N.H. Dep't of Corrections, 221 F.3d 254, 259 at 262 (1st Cir. 2000) (quoting Hernández–Torres v. Intercontinental Trading, Inc., 158 F.3d 43 at 47 (1st Cir. 1998)). Plaintiff testified that she received two evaluations exceeding seventy percent both in 2009 and 2010. Plaintiff references these two evaluations, both for more than seventy percent, to show her

28

40

Civil No. 11-1756 (GAG)

devaluated work.  She alleges that Millán classified her vacation time as abscesses and this is one of the reasons she received a seventy six percent on one of her evaluations.  First, Plaintiff failed to present sufficient evidence to establish that Millán improperly counted her leave or vacation time.  Second, she failed to specify the dates of these evaluations.  The dates of such evaluations are imperative to determine if the alleged retaliatory acts [negative evaluations] occurred *after* Plaintiff engaged in protected activity.  The 2009 evaluation cannot constitute a retaliatory act because it took place the year *before* Plaintiff filed her sexual harassment complaint.  As stated, for retaliation purposes, relevant conduct must have taken place *after* a plaintiff engaged in protected activity. Acosta, 674 F. Supp. 2d at 365.  As such, the 2009 evaluation is out.  Only the 2010 contested evaluation may be considered by the court.  However, as mentioned above, the evaluation's date is also unknown.  It could have been drawn up *before* Plaintiff engaged in protected activity or it could have been prepared after.  The court cannot read the parties' minds.

Plaintiff asserts that the above facts support her allegation that Millán gave her two devaluated evaluations in retaliation for complaining about Rivera's sexual harassment.  This claim does not hold water.  It is not enough that Plaintiff believes discrepancies with her use of leave *may* have affected her evaluations and brought down her score.  Specially, in light of the fact that Plaintiff admitted her use of leave had become an issue with her supervisor but she was never admonished for absenteeism or tardiness.  Plaintiff testified she did not experience any reduction in pay because of these evaluations.  Plaintiff does not allege she suffered any "injury or harm" nor does she present the court with sufficient evidence to establish that the two "negative" evaluations she references constitute an adverse employment action.  A more "tangible change in duties or working conditions" is needed before the court can conclude that the Plaintiff's experience with her evaluations constituted an adverse employment action. See Marrero, 304 F.3d 7, 25 (1st Cir. 2002).

Most importantly, Plaintiff failed to present as evidence these "contested" evaluations for the court's consideration.  As a result, the court cannot ascertain the exact score she received, the date of both evaluations, the comments included, whether or not Millán actually addressed Plaintiff's

Civil No. 11-1756 (GAG)

use of leaves, the reasons and/or justification for the score and whether or not Plaintiff contested or disagreed with them.  Plainly, Plaintiff failed to present sufficient evidence to satisfy the second prong.  The allegations presented by Plaintiff that Millán improperly counted her leave and gave her two negative evaluations are not supported by the record, therefore, cannot be considered adverse employment actions.  Moreover, Plaintiff advanced no evidence sufficient to create a genuine issue of fact of whether she received unwarranted negative evaluations or Millán improperly counted her leave because she complained about Rivera's sexual harassment.

Finally, Plaintiff alleges that her supervisor consistently refused to receive medical certificates that evidence and justify her absences from work. (Docket No. 3 at 9.)  Plaintiff failed to provide the court with any specific incident to support her allegations.  Furthermore, the record shows that Plaintiff testified as to only *one* instance regarding her medical certificates that dates back to summer 2009, *before* she complained about sexual harassment. (See Docket No. 63-2, at 82, 83.)  Hence, the alleged retaliatory action occurred *prior* to Plaintiff engaging in protected activity and, as such, cannot constitute retaliation in violation of Title VII.  For purposes of retaliation, "[t]he relevant conduct is that which occurred after" Plaintiff complained about her co-worker's related harassment.  See Quiles-Quiles, 439 F.3d at 8.  Consequently, this fails to satisfy the second prong.

The court notes that in her Opposition to Defendant Supervisor's Motion for Summary Plaintiff introduced for the first time a new fact related to her retaliation claim: that Millán subjected her to a Memorandum of Insubordination. (Docket Nos. 113 at 19; 137-8.)  On August 19, 2011, Millán presented Plaintiff with a Memorandum for Insubordination where Millán explained that Plaintiff had engaged in insubordination when she disobeyed a direct order instructing her to go the Lighthouse to begin her shift (while her co-worker would get gas for the official vehicle) so that services would not be affected. (Docket No. 137-8.)  On September 21, 2011, Plaintiff responded to the Memorandum stating her disagreement with the same because she chose to disobey Millán's orders and not to remain alone at the Lighthouse while her co-worker went to get gas.  Plaintiff

42

**Civil No. 11-1756 (GAG)**

added that Millán's instructions posed a threat to her safety. (Docket No. 137-9.)  Plaintiff failed to mention this Memorandum in her complaint, her statement of material facts, her opposition to the Municipality's motion for summary judgment.  Yet, she mentions it for the first time as a response to Defendant Supervisor's motion for summary judgment.  It is uncontested that Plaintiff received the Memorandum because she responded to the same, thus it is odd Plaintiff failed to mention it from the beginning.

The court also notes that even Plaintiff admits Millán had accused her of insubordination before.  In fact, Plaintiff included in her statement of material facts that Millán had complained about Plaintiff because she had an "attitude" and tried to overpass Millán's instructions. (Docket No. 96 at 7.)  Moreover, on November 19, 2009, Millán wrote a memorandum to mayor Rodríguez to inform her that she was encountering problems with her personnel (Guadalupe and Plaintiff) and problems of insubordination, reluctance to teamwork, among others. (Docket No. 137-5.)  What is more, Millán even point out Plaintiff's issue with her use of vacation days. Id.

The court thus notes that Millán had raised concerns about Plaintiff's insubordination and attitude way before she engaged in protected activity.  Therefore, the Memorandum of Insubordination issued on August 19, 2011, after Plaintiff complained of Rivera's sexual harassment cannot be viewed as an isolated incident.  To the contrary, even Plaintiff points to the fact that Millán had complained before of Plaintiff's behavior.  As such, the court cannot infer any retaliatory animus from this incident.

Plaintiff carries the burden of presenting admissible evidence of retaliatory intent in response to a summary judgment request. See Bibiloni, 661 F. Supp. 2d at 170.  The court need not consider unsupported suppositions. "While [plaintiff] engages in much speculation and conjecture, a plaintiff cannot defeat summary judgment by relying on conclusory allegations, or rank speculation. To defeat summary judgment, a plaintiff must make a colorable showing that an adverse action was taken for the purpose of retaliating against him." Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir.2007) (citations and internal quotation marks omitted).

Civil No. 11-1756 (GAG)

Plaintiff failed to present sufficient admissible evidence for a trier of fact to infer that a materially adverse employment action was taken for the purpose of discriminating against her. Plainly, Plaintiff did not make a colorable showing that she suffered an adverse employment action. As such, she failed to satisfy the second prong of a *prima facie* retaliation claim. "In the absence of a finding that the plaintiff has suffered adverse action, a retaliation claim fails as a matter of law." Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006).  Moreover, Plaintiff failed to show that an adverse act was taken against her for the purpose of retaliating against her. Mariani-Colon, 511 F.3d 216, 223.  Even assuming *arguendo* that Plaintiff had shown Millán's conduct in fact constituted an adverse employment action, thereby fulfilling the second prong, the court finds that Plaintiff failed to provide any evidence showing that the unlawful retaliation would not have occurred in the absence of, "*but-for*" the challenged employment action (Rivera's illegal harassment). Nassar, 133 S.Ct. at 2533.

A Plaintiff  attempting to establish a retaliation claim must ultimately show that "the unlawful retaliation would not have occurred  in the absence of the alleged wrongful action or actions of the employer." Nassar, Id. See also, Ray v. Ropes & Gray LLP, CIV.A. 11-11370-RGS, 2013 WL 4407099 (1st Cir. 2013.)  Plaintiff's retaliation claim cannot meet the stringent *but-for* causation standard for Title VII retaliation claims recently adopted in Nassar, Id.  In the instant case, Plaintiff failed to adduce sufficient evidence to survive summary judgment on her retaliation, therefore, failed to establish a *prima facie* case of retaliation.  Therefore, the Municipality and Defendant Supervisor's Motions for Summary Judgment (Docket Nos. 63 & 81, respectively) with regards to Plaintiff's Title VII retaliation claim is **GRANTED** and Plaintiff's Title VII retaliation claims are hereby **DISMISSED.**

D.   Supplemental Claims

Based on the same factual allegations supporting her Title VII claims, Plaintiff claims a cause of action under Law 17 and Article 1802.

Civil No. 11-1756 (GAG)

### 1.      Law 17 Claims

Plaintiff alleges each named defendant violated Law 17.  Law 17 prohibits sexually harassing behavior in employment and proscribes sexual harassment in the form of a hostile work environment.  P.R. LAWS ANN. tit. 29, §§ 155 *et seq.*   When assessing claims under Law 17, the same exacting standard that is applied to Title VII claims is employed in Puerto Rico courts to establish the existence of a hostile work environment.   Figueroa Garcia v. Lilly Del Caribe, Inc., 490 F. Supp. 2d 193, 212 (D.P.R. 2007);  Garcia v. Suarez & Co., 288 F.Supp.2d 148, 161 (D.P.R. 2003) ("the court has recognized that Law 17 conforms to the hostile work environment requirements established in Title VII.").

Under Puerto Rico law, an individual who engages in discriminatory acts in the workplace may be liable in his personal capacity pursuant to Law 17.  Rosario-Toledo v. Distribuidora Kikuet, Inc., 151 D.P.R. 634, 647 (2000).  The Puerto Rico Supreme Court held in Rosario-Toledo that Laws No. 17, 69 and 100 provide for the imposition of individual liability upon any agent, official, administrator or supervisor who is responsible for the illegal conduct in the workplace. Id. See Rivera-Garcia v. Sprint PCS Caribe, 09-1813 PG, 2010 WL 3123296 (D.P.R. Aug. 9, 2010). Moreover, Law 17 explicitly imposes liability on "municipal governments and any of its municipal instrumentalities or corporations."   P.R. Laws Ann. tit. 29, § 155a;  Rios v. Municipality of Guaynabo, 938 F. Supp. 2d 235, 258 (D.P.R. 2013).  Additionally, although Law 17 and Law 69 do not set forth the statutes of limitations in their statutory language, the one-year tort limitations period applies to both causes of action by analogy to Law 100.   29 P.R. Laws Ann. § 146 et seq.  Matos Ortiz v. Com. of Puerto Rico, 103 F. Supp. 2d 59, 63 (D.P.R. 2000).

Plaintiff's Title VII hostile work environment claim against the Municipality survived summary judgment; this is Plaintiff's only Title VII claim.  Using the same standard applied to Title VII claims, Plaintiff's Law 17 claim against the Municipality could withstand summary disposition for the same reasons.  However, the same reasoning employed by the court as to the untimeliness of Plaintiff's Section 1983 claims also applies to her Law 17 claims.  Here, the last acts of

Civil No. 11-1756 (GAG)

harassment against Plaintiff took place on June 2010, date on which her claim accrued.  On April 26, 2010, Plaintiff asserted an extrajudicial letter against Rodríguez, Millán and Rivera all in their official capacities, but failed to include and file it against Morales, the Municipality and the above defendants in their personal capacity.  More than 365 days from the date the cause of action accrued, on August 4, 2011, Plaintiff filed the instant action.  For the same reasons discussed above concerning the timeliness of Plaintiff's Section 1983 claim, Plaintiff's extrajudicial letter failed to toll the one-year statute of limitations as to her Law 17 claims.  Therefore, her Law 17 claims against all named defendants are.  Accordingly, Plaintiff's Law 17 claims against all named defendants are hereby **DISMISSED** for untimeliness.[13]

Although all Law 17 claims being time-barred, the court notes that also in her complaint, Plaintiff asserted a retaliation claim under Law 17.  Law 17 protects an employee against retaliatory action by an employer due to an employee's participation in the lodging or investigation of a sexual harassment complaint. See P.R. LAWS ANN. tit. 29, § 155h;  Matos Ortiz, 103 F. Supp. at 63 (noting Law 17 supports sexual harassment and retaliation claims).  The court concluded above that Plaintiff failed to present sufficient evidence to establish a *prima facie* case of retaliation under Title VII.  To the extent that Plaintiff's Law 17 claim relies upon a retaliation theory, such claim should be dismissed on the same grounds as Plaintiff's Title VII retaliation claim.

### 2.    Article 1802 Claim

The legal framework under Article 1802 "is that the provisions of the Civil Code are supplementary to special legislation." Rivera–Melendez v. Pfizer Pharm. Inc., 747 F.Supp.2d 336, 339 (D.P.R.2010); See Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 878 F. Supp. 2d 351, 356 (D.P.R. 2012).  The Supreme Court of Puerto Rico has held that "[a]s a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the

---

[13] Concerning Plaintiff's Law 17 claims against Rivera, the court notes that Rivera failed to deny and ultimately defend himself against Plaintiff's sexual harassment allegations.  Plaintiff averred, "Rivera does not challenge any of the factual allegations Plaintiff charged against him." (Docket No. 118 at 2.)  Given the record, Plaintiff's sexual harassment allegations are plausible.  Nevertheless, Plaintiff's Law 17 claim is time barred.

Civil No. 11-1756 (GAG)

employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802. . . ." <u>Reyes–Ortiz v. McConnell Valdes</u>, 714 F.Supp.2d 234, 239 (D.P.R. 2010) (citations omitted) (internal quotation marks omitted).  Based on this language, this court has held that:

> [T]o the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he (she) is barred from using that same conduct to also bring a claim under Article 1802. An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked.

<u>Reyes-Ortiz</u>, 714 F. Supp. at 239.

Plaintiff may only bring an additional Article 1802 claim if it is based on tortious or negligent conduct that is distinct from the conduct covered by the specific labor law. <u>Id.</u>  A review of Plaintiff's complaint reveals that she bases her Article 1802 claim on the same conduct and same facts that support her specific employment law claims and alleges no independent tortious conduct. Plaintiff's Article 1802 claim is superseded by Puerto Rico special employment statutes.  Therefore, the court **GRANTS** the Municipality's, Defendant Supervisor's and Rivera's Motions for Summary Judgment at Docket Nos. 63, 81 and 85, respectively, and **DISMISSES** Plaintiff's Article 1802 claims.

**V.     Conclusion**

For the foregoing reasons, the court **GRANTS in part** and **DENIES in part** the Municipality's Motion for Summary Judgment at Docket No. 63; **GRANTS** Defendant Supervisors' Motion for Summary Judgment at Docket No. 81; and **GRANTS** Rivera's Motion for Summary Judgment at Docket No. 85.  The only remaining claim against the Municipality is that of sexual harassment (hostile work environment) under Title VII.  As to all individual named defendants, there are no claims pending before the court because all claims against them have been **DISMISSED.**

Civil No. 11-1756 (GAG)

**SO ORDERED**

In San Juan, Puerto Rico this 11th day of March, 2014.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge